DAVID B. GOLUBCHIK (SBN 185520)
EVE H. KARASIK (SBN 155356)
JULIET Y. OH (SBN 211414)
JOHN-PATRICK M. FRITZ (SBN 245240)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
Email: DBG@LNBYB.COM; EHK@LNBYB.COM;
        JYO@LNBYB.COM; JPF@LNBYB.COM

Proposed Attorneys for Chapter 11 Debtor
and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>ANNA'S LINENS, INC.,<br><br>                    Debtor. | Case No. 8:15-bk-13008-TA<br><br>Chapter 11<br><br>**DEBTOR'S EMERGENCY MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTOR TO PROVIDE ADEQUATE PROTECTION FOR WAREHOUSE LIENS AND CARRIER LIENS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[Declaration of J.E. Rick Bunka Filed Concurrently Herewith]**<br><br>DATE:       June 16, 2015<br>TIME:        2:00 p.m.<br>PLACE:    Courtroom 5B<br>                 411 West Fourth Street<br>                 Santa Ana, California |

## TABLE OF CONTENTS

SUMMARY ............................................................................................................1

ADDITIONAL INFORMATION..........................................................................3

MEMORANDUM OF POINTS AND AUTHORITIES.......................................5

I. STATEMENT OF FACTS ...............................................................................5

    A.  Background. ...........................................................................................5

    B.  Events Leading To The Filing Of The Debtor's Chapter 11
        Bankruptcy Case And Anticipated Exit Strategy................................6

    C.  The Possessory Liens, Warehouses, Carriers, Distribution Centers,
        and Logistics of the Debtor's Ongoing Operations............................8

II. DISCUSSION ................................................................................................10

    A.  The Debtor Should Be Authorized to Provide Adequate Protection
        to Possessory Lien Creditors for Use of Its Goods and Inventory to
        Operate, Maintain and   Preserve Its Business. ................................10

    B.  The Procedural Requirements Regarding Approval of this Emergency
        Motion Have Been Satisfied. ................................................................14

III.  CONCLUSION............................................................................................15

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

**Federal Cases**

5

*In re Bill's Dollar Stores, Inc.*,
 164 B.R. 471 (Bankr.D.Del.1994) ...........................................................................................12

6

*In re Dynaco*,
 162 B.R. 389 (Bankr.D.N.H.1993) .........................................................................................14

7

8

*First Federal Bank of California v. Weinstein (In re Weinstein)*,
 227 B.R. 284 (9th Cir.B.A.P.1998).........................................................................................13

9

*In re Immenhausen Corp.*,
 164 B.R. 347 (Bankr.M.D.Fla.1994) ......................................................................................14

10

11

*In re McCombs Properties VI, Ltd.*,
 88 B.R. 261 (Bankr.C.D.Cal.1988).........................................................................................12

12

13

*In re Newark Airport/Hotel Ltd. Partnership*,
 156 B.R. 444 (Bankr.D.N.J.1993) *affirmed*, 155 B.R. 93......................................................13

14

*Orix Credit Alliance, Inc. v. Delta Resources, Inc. (In re Delta Resources, Inc.)*,
 54 F.3d 722 (11th Cir.1995) ....................................................................................................13

15

16

*Pester Refining Co. v. Mapco Gas Products, Inc. (In re Pester Refinancing Co.)*,
 845 F.2d 1476 (8th Cir.1988) ..................................................................................................12

17

*Matter of Pursuit Athletic Footwear, Inc.*,
 193 B.R. 713 (Bankr.D.Del.1996) ..........................................................................................13

18

19

*In re Sharon Steel Corp.*,
 176 B.R. 384 (Bankr.W.D.Pa.1995) .......................................................................................12

20

21

*United Savings Association v. Timbers of Inwood Forest Associates*,
 108 S.Ct. 626 (1988)................................................................................................................12

22

*United States v. Whiting Pools, Inc.*,
 462 U.S. 198 (1983)..................................................................................................................12

23

24

25

26

27

28

**Federal Statutes**

11 U.S.C.

§ 361.................................................................................................................12
§ 363(c)(l)....................................................................................................10, 11
§ 363(e)......................................................................................................3, 11, 14
§§ 541(a) and 542(a)..........................................................................................12
§ 1107(a)............................................................................................................11

49 U.S.C.
§ 14908(a)(1) .......................................................................................................9

**Other State Statutes**

UCC

§ 1-201(6).............................................................................................................9
§ 7-209(a)...........................................................................................................11
§ 7-209(e)...........................................................................................................11
§ 7-307(a)...........................................................................................................12
§ 7-307(c)...........................................................................................................12
§ 9-333(b)...........................................................................................................12

**TO THE HONORABLE THEODOR C. ALBERT**, **UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, SALUS CAPITAL CREDITORS, ALL SECURED CREDITORS, CARRIERS AND WAREHOUSES, THE DEBTOR'S TWENTY LARGEST UNSECURED CREDITORS AND OTHER PARTIES IN INTEREST:**

<u>**SUMMARY**</u>

Pursuant to sections 105, 361, and 363 of title 11 of the United States Code, sections 101 *et seq.* (the "<u>Bankruptcy Code</u>"), Rules 2002, 4001(a), and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rules 2081-1(a) and 9075-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California (the "<u>Local Rules</u>"), Anna's Linens, Inc. (the "<u>Debtor</u>"), the debtor and debtor in possession in the above-captioned bankruptcy case (the "<u>Chapter 11 Case</u>"), hereby files this motion (the "<u>Motion</u>"), on an emergency basis, for the entry of an order authorizing the Debtor to provide adequate protection to the holders of warehouse liens and carrier liens (collectively, the "<u>Possessory Liens</u>") for the Debtor's use of its property. The Motion is supported by the attached Memorandum of Points and Authorities and the Declaration or J.E. Rick Bunka filed contemporaneously herewith.

The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on June 14, 2015 (the "<u>Petition Date</u>").  The Debtor continues to operate its business and manage its financial affairs and bankruptcy estate as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

The Debtor is a leading specialty retailer offering high quality and stylish home textiles, furnishings, and décor at attractive prices. The Debtor is headquartered in Costa Mesa, California, operates a chain of 261 company-owned retail stores throughout 19 states in the United States (including Puerto Rico and Washington, D.C.), generates over $300 million in annual revenue, and employs a workforce of over 2,500 people.

Over expansion and excess inventory led to increased indebtedness and ultimately a default with the Debtor's long-time lender Union Bank.  The Debtor entered into Credit Agreement with Salus Capital ("<u>Salus</u>") for an $80 million line of credit in July 18, 2014 (the "<u>Credit Agreement</u>").  On March 30, 2015 the Debtor notified Salus of a Default or Event of Default for failure to maintain a specified Operating Expenditures to Gross Margin Dollars Ratio associated with the Credit Agreement.  On April 29, 2015, Salus delivered to the Debtor a notice of Events of Default and Reservations of Rights alleging that the Debtor had defaulted under several provisions of the Credit Agreement.   On May 13, 2015, the Debtor signed "First Amendment and Waiver to the Credit Agreement" (the "<u>First Amendment</u>"). The First Amendment provides for a waiver of only the Specific Defaults (as defined in the Credit Agreement)  and provided increased availability through removal of an availability block as well as providing for certain additional requirements for a new Cash Flow Budget and Operating Covenant, as well as specific milestones and activities associated with several projects that were already underway.  In addition the First Amendment called for  Payment of Deferred Origination Fees associated with the underlying Credit Agreement. Certain of the requirements were to  be satisfied within an aggressive timetable.

Over the resulting weeks, the Debtors merchandise vendors significantly reduced delivery of anticipated receipts resulting in a second default of the Credit Agreement.  As a result of the Debtor's financial challenges, Credit Agreement defaults and the inability of the Debtor to affect the Capital Transaction, the Debtor filed the Chapter 11 Case.

The Debtor's supply chain involves a complex global system of purchase orders from across the world, international shipments of inventory on ocean carriers, receipt at ports, storage at warehouses, and delivery by land carriers.   At each stage, these various carriers and warehouses hold possessory liens by way of contractual liens, warehouse liens, and carrier's liens.   The exercise of these possessory lien rights and withholding of inventory would be extremely disruptive to the Debtor's business and would severely reduce the value of the Debtor's enterprise, whether as a going concern or in an orderly liquidation.  For the preservation

of the estate, it is imperative that the Debtor's logistics, shipment, storage, and delivery of inventory continue unimpaired.

A list of creditors holding Possessory Liens (the "<u>Possessory Lien Creditors</u>") is included in the Motion. By way of this Motion, the Debtor proposes to provide Possessory Lien Creditors with adequate protection by making cash payments in the ordinary course of business to apply to and reduce their secured claims, as set forth in the Debtor's budget, which is subject to Court approval in a separate and concurrently filed motion. Furthermore, the Debtor will remain current on the post-petition obligations to the Possessory Lien Creditors in the ordinary course of business. The Possessory Lien Creditors will maintain their Possessory Lien rights to the same priority, validity, and extent as their prepetition liens, but no Possessory Lien Creditor will foreclose, sell, or deprive the Debtor of its inventory and goods without relief from stay and a Bankruptcy Court order.

## **ADDITIONAL INFORMATION**

A true and correct copy of the proposed form of order granting the Motion is attached as **Exhibit "1"** hereto.

Pursuant to Bankruptcy Rule 4001(a)(1), the Debtor is required to serve a copy of the Motion on the 20 largest unsecured creditors and any other entity that the Court directs. By way of a concurrently filed motion to limit notice, the Debtor has requested permission to serve the Motion by way of a notice and website link to the Motion. In order to provide maximum notice of this Motion, concurrently with the filing of this Motion with the Court, the Debtor has served a notice of hearing on the Motion, which contains a website address which any party can visit and obtain a copy of the Motion, upon the Possessory Lien Creditors, the Office of the United States Trustee, all secured creditors and their counsel (if known), the 20 largest unsecured creditors of the Debtor and parties requesting special notice via overnight mail. Hard copies of this Motion are available upon request to the Debtor's proposed counsel whose contact information is located on the upper-left hand corner of this Motion.

Pursuant to Bankruptcy Rule 4001(a)(2), the Court may grant relief on an *ex parte* basis

to condition the use of property of the estate under § 363(e) without prior notice if (A) there is a clear showing of immediate and irreparable loss before notice can be given to adverse parties and (B) there is evidence that notice was attempted to be given but could not be given in time.  The Debtor is not seeking *ex parte* relief, but, to the extent *ex parte* relief must be granted, the Debtor submits that the Motion and supporting declarations provide competent bases for such relief.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order:

1.      Granting this Motion on an emergency basis;

2.      Finding that notice was good and proper;

3.      Authorizing the Debtor to provide adequate protection to the Possessory Lien Creditors, as set forth in the Motion and as set forth in the Debtor's budget, which is subject to Court approval in a separate and concurrently filed motion; and

4.      Granting such other and further relief as the Court deems just and proper.

Dated:  June 15, 2015                    ANNA'S LINENS, INC.


                                         By:___*/s/ John-Patrick M. Fritz*_____
                                             DAVID B. GOLUBCHIK
                                             EVE H. KARASIK
                                             JULIET Y. OH
                                             JOHN-PATRICK M. FRITZ
                                             LEVENE, NEALE, BENDER,
                                                 YOO & BRILL L.L.P.
                                             Proposed Attorneys for Debtor and
                                             Debtor in Possession

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     STATEMENT OF FACTS

**A.     Background.**

Anna's Linens, Inc., a Delaware corporation and the debtor and debtor-in-possession herein (the "Debtor"), filed a voluntary petition under Chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") on June 14, 2015 (the "Petition Date").  The Debtor continues to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

The Debtor is a leading specialty retailer offering high quality and stylish home textiles, furnishings, and décor at attractive prices.  The Debtor is headquartered in Costa Mesa, California, operates a chain of 261 company owned retail stores throughout 19 states in the United States (including Puerto Rico and Washington, D.C.), generates over $300 million in annual revenue, and employs a workforce of over 2,500.

Over the last 25 years, the Debtor has built its store base through a clustering approach in key markets, including Los Angeles, Dallas, Chicago, Miami and Houston.  The Debtor has three distribution centers to support its nationwide presence in Fontana, California, Coppell, Texas, and Charlotte, North Carolina.  The Debtor leases its distribution centers, which are operated by third-party logistics providers.

The Debtor employs a flexible small-box retail strategy with approximately 9,500 square foot stores with a focus on price, value, and expert customer service.  The Debtor's stores are typically located in high traffic strip centers in the heart of local neighborhoods that the stores are servicing. The Debtor also has developed an e-commerce platform that provides customers across the country with access to the Debtor's full merchandise assortment. The Debtor's model enables it to compete well with traditional self-service big box home retailers and discounters.

The Debtor targets a large and growing segment of the United States population that values fashion, brand names and customer service, but is seeking high value and attractive price points. Merchandise is selected to appeal to its core customer base and is focused on domestic items such

as bed linens, bath items, kitchen textiles, window drapes, and furniture covers, and certain home furnishing categories.

**B.    Events Leading To The Filing Of The Debtor's Chapter 11 Bankruptcy Case And Anticipated Exit Strategy.**

The Debtor opened its first store in 1987, and by 2013, it had 309 stores.  Beginning in 2011, the Debtor started experiencing significant financial and operational challenges.  The Debtor was unsuccessful in some of its new markets such as Puerto Rico and St. Louis, and overbuilt otherwise healthy markets in response to its new television marketing.  In addition, the Debtor's core demographic changed as Generation X and Millennials replaced Baby Boomers as the primary home furnishing shoppers.  Merchandise did not resonate with the new shoppers, and aged and unfashionable inventory remained in the stores reaching a high of $380,000 per store by fiscal year 2013.  The Debtor's shift to "Every Day Low Prices" from promotions and in-store discounts as well as new expensive television advertising strategy did not attract customers.

The over expansion and excess inventory led to increased indebtedness and, ultimately, a default with the Debtor's long-time lender, Union Bank.  In order to refinance the Debtor's obligations to Union Bank, the Debtor entered into a Credit Agreement with Salus Capital Partners, LLC, as Administrative Agent (in such capacity, the "Administrative Agent") and the lenders party thereto (the "Lenders" and together with Salus, the "Secured Parties") for an $80 million line of credit on July 18, 2014 (the "Credit Agreement").

On March 30, 2015 the Debtor notified the Administrative Agent of a Default or Event of Default for failure to maintain a specified Operating Expenditures to Gross Margin Dollars Ratio associated with the Credit Agreement.  On April 29, 2015, the Administrative Agent delivered to the Debtor a notice of Events of Default and Reservations of Rights based on the existing defaults under the Credit Agreement.   After negotiation between the Debtor and the Administrative Agent, the Administrative Agent and Lenders agreed to waive such Events of Default and, on May 13, 2015, Administrative Agent delivered to the Debtor the "First Amendment and Waiver to the Credit Agreement" (the "First Amendment").  The First Amendment provided   a waiver of the Specific Defaults (as defined therein)   and provided

certain consents under amendments to the Credit Agreement including, without limitation, (i) increased availability through removal of an availability block, (ii) a requirement for the Debtor to deliver and abide by a Cash Flow Budget, (iii) an agreement by the Debtor to place specific milestones on activities with several projects that were already underway  and (iv) payment of certain fees and expenses.

Over the resulting weeks, the Debtor's merchandise vendors significantly reduced delivery of anticipated merchandise resulting in an additional default of the Credit Agreement. As a result of the Credit Agreement defaults, and the inability of the Debtor to affect the Capital Transaction prepetition, the Debtor determined it was necessary to commence the Chapter 11 Case.

Prepetition, the Debtor engaged in a process whereby simultaneously the Debtor negotiated with its largest vendors to convert certain trade payables into long term Junior Secured Notes Payables to create additional long term liquidity and, through its investment banker Wunderlich Securities, Inc. ("Wunderlich"), it pursued additional outside investments to recapitalize its balance sheet.  Wunderlich undertook a broad process in search of additional capital that included contacting over 200 investors and institutions. Wunderlich's efforts resulted in the receipt of multiple written indications of interest from potential acquirers and investors, including a Letter of Intent (the "LOI") from DW Partners, LP ("DW Partners"). The Debtor, in consultation with its advisers, determined that the DW Partners' LOI was the highest and best received. The Debtor and DW Partners are currently in the process of negotiating a definitive asset purchase agreement for a going concern transaction (the "Going Concern Transaction" and the "Going Concern APA").  Under the terms of the Agency Agreement executed by the Debtor on June 11, 2015, the Debtor has until Friday, June 19, 2015 to execute the Going Concern APA. If the Debtor enters into the Going Concern Transaction by the deadline, then the Debtor intends to go forward with a Bankruptcy Code section 363 sale and auction process with DW Partners as the stalking horse purchaser. The Debtor is using best efforts to achieve a transaction that will preserve the Debtor's business operations, which will preserve jobs of thousands of employees, going forward customer for the Debtor's vendors and the Debtor's continuing support of the local communities in which the Debtor's stores operate.

As required by the First Amendment, the Debtor has also engaged in a process to identify and select a stalking horse bidder for the possible sale and/or liquidation of the business should the Going Concern Transaction fail.    The Debtor's efforts to retain a liquidator resulted in the execution of the Stalking Horse Agency Agreement with a joint venture comprised of Tiger Capital Group ("Tiger") and Yellen Partners, LLC ("Yellen" together with Tiger, "Tiger/Yellen Stalking Horse"), which included a guarantee from Tiger/Yellen Stalking Horse that the Debtor would receive 93.5% of the aggregate Cost Value of the Merchandise (terms as defined in the Stalking Horse Agency Agreement), subject to certain adjustments, Further, as a result of the default, an auction was held on June 9, 2015 and June 10, 2015 at which the Tiger/Yellen Stalking Horse was outbid by a group formed by Hilco Merchant Resources, LLC and Gordon Brothers Retail Partners, LLC (together, the "Agent" or "Hilco/GB"), which included an increase in the guarantee to 111% of the Cost Value of the Merchandise with a Merchandise Threshold (terms as defined in the Agency Agreement, defined below) of not less than $61.5 million and not more than $67 million, subject to certain adjustments. The Debtor and the Agent, with the approval of the Administrative Agent, signed the Agency Agreement (the "Agency Agreement") on June 11, 2015.

The Debtor and the Agent agreed that if the Going Concern APA is executed, the Agency Agreement will convert to an equity transaction for a lesser number of stores, allowing the company to pursue an alternative exit strategy for the Chapter 11 Case. If the Debtor enters into the Going Concern Transaction by the deadline, then the Debtor will pursue a sale of substantially all of its assets pursuant to Bankruptcy Code section 363. If the Debtor does not enter into the Going Concern Transaction, then the Debtor will conduct store closing sales pursuant to the Agency Agreement.

**C.    The Possessory Liens, Warehouses, Carriers, Distribution Centers, and Logistics of the Debtor's Ongoing Operations.**

The Debtor has three distribution centers to support its nationwide presence located in Fontana, California, Coppell, Texas, and Charlotte, North Carolina. The Debtor leases its distribution centers, which are operated by third-party logistics providers.  The Debtor's supply chain involves a complex global system of purchase orders from across the world, international

1  shipments of inventory on ocean carriers, receipt at ports, storage at warehouses, and delivery by

2  land carriers.  At each stage, these various carriers and warehouses hold possessory liens by way of

3  contractual liens, warehouse liens, and carrier's liens by way of documents of title, bills of lading,

4  and warehouse receipts.  UCC §§ 1-201(6) (defining "bill of lading"); 1-201(16) (defining

5  "document of title," which includes bill of lading, docket warrants, dock receipts, warehouse

6  receipts, and orders of the delivery of goods); 1-201(42) (defining warehouse receipt); 7-209

7  (regarding warehouseman's lien); 7-210 (enforcing warehouseman's lien)  7-307 (regarding liens

8  of carriers); 7-308 (enforcing carrier's lien).[1]  The exercise of possessory lien rights and withholding

9  of inventory would be extremely disruptive to the Debtor's business and would severely reduce the value of

10  the Debtor's enterprise, whether as a going concern or in an orderly liquidation.  For the preservation of

11  the estate, it is imperative that the Debtor's logistics, shipment, storage, and delivery of inventory

12  continue unimpaired.

13      The table below sets forth the identity of the creditors holding Possessory Liens (the

14  "Possessory Lien Creditors"), the types of their liens, their roles in the Debtor's operations, the

15  amount of their prepetition claims, and the value of inventory and goods in their possession as of

16  the Petition Date (estimated, as such inventory and goods are in flux as they pass from ship to

17  port to truck to warehouse to truck and to store).[2]

19

| Creditor | Type of Lien | Role | Claim | Value of Goods |
|---|---|---|---|---|
| American Pres. Lines | Carrier's Lien | Carrier | $29,874 | ------[3] |
| CMA CGM | Carrier's Lien | Carrier | $126,184 | $1,321,178 |
| Crowley Liner | Carrier's Lien | Carrier | $27,770 | ------ |
| US Lines LLC | Carrier's Lien | Carrier | $187,208 | $194,163 |

[1]  Although the choice of state law differs by contract amongst the Possessory Lien Creditors, all relevant jurisdictions, including, *inter alia*, California, New York, Texas, and Virginia, have adopted the Uniform Commercial Code ("UCC").

[2]  Contracts with the Possessory Lien Creditors are subject to contractual and/or statutory confidentiality provisions. *See, e.g.*, 49 U.S.C. § 14908(a)(1).

[3]  Although two carriers, American Presidential Lines and Crowley Liner Services, do not have any of the Debtor's goods in their possession at the time of the filing of this Motion, the Debtor uses both carriers' services, and goods will come into their possession in the ordinary course of business, at which time they will acquire carrier's liens for their claims. Accordingly, they are included in this Motion and relief requested herein.

9

| Evans Delivery Co. | Carrier's Lien | Land Carrier | $75,877 | $250,000 |
| Transplace Texas LP | Carrier's Lien | Land Carrier | $1,235,375 | $1,550,782 |
| Excel Inc. | Warehouse Lien | Warehouse | $717,689 | $6,726,611 |
| Expeditors Intl. | Warehouse Lien | Warehouse | ------ | $315,367 |
| Performance Team | Warehouse Lien | Warehouse | $708,258 | $9,595,927 |

The value of goods in the possession of the Possessory Lien Creditors, as expressed in the table above, is the inventory value at cost.  If sold through Anna's stores, the value will be considerably higher.   By contrast, if the warehouses or carriers sold the goods through warehouseman's or carrier's lien sale under the UCC, the value would likely be even lower than the cost value expressed in the table   As long as the Debtor can continue to operate, it can sell the goods and inventory at retail value and provide more cash to make regular payments to the Possessory Lien Creditors, generate more cash to operate, and ultimately, provide more cash to pay other creditors of the estate.

By way of this Motion, the Debtor proposes to provide Possessory Lien Creditors with adequate protection by making cash payments in the ordinary course of business to apply to their secured claims, as set forth in the Debtor's budget, which is subject to Court approval in a separate and concurrently filed motion.  Furthermore, the Debtor will remain current on the post-petition obligations to the Possessory Lien Creditors in the ordinary course of business.  The Possessory Lien Creditors will maintain their Possessory Lien rights to the same priority, validity, and extent as their prepetition liens, but no Possessory Lien Creditor will foreclose, sell, or deprive the Debtor of its inventory and goods without relief from stay and a Bankruptcy Court order.

## II.     DISCUSSION

A.     **The Debtor Should Be Authorized to Provide Adequate Protection to Possessory Lien Creditors for Use of Its Goods and Inventory to Operate, Maintain and Preserve Its Business.**

The Debtor's use of property of its estate in the ordinary course is governed by section 363 of the Bankruptcy Code.  Section 363(c)(l) provides in pertinent part:

> If the business of the debtor is authorized to be operated under section. . .1108. . . of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of

> property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. §363(c)(l).  The Debtor's use of property of its estate outside the ordinary course is governed by subsection 363(b) and requires notice and a hearing.  A debtor in possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with Section 363.  <u>See</u> 11 U.S.C. §1107(a).

Regardless of whether a debtor in possession seeks to use property of the estate under subsections 363(b) or 363(c), such use cannot be inconsistent with Bankruptcy Code subsection 363(e), which provides, in pertinent part:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. . . .

11 U.S.C. § 363(e).  The Possessory Lien Creditors have an interest in the Debtor's goods and inventory in their possession.   The Debtor requires the release of its inventory and goods to maintain its business operations.

A warehouse automatically acquires the right to a lien when goods are delivered to it, whether or not the warehouse receipt is negotiable.  UCC § 7-209(a), and official comment 1, thereto.   The lien covers charges for storage and transportation, including demurrage and terminal charges, insurance, labor, charges present or future in relation to the goods, and for expenses necessarily incurred for the preservation of the goods.  *Id.*  A receipt is not necessary, and a storage agreement alone is sufficient.   *Id.* and official comment 6, thereto.   The warehouseman's lien is a possessory lien, lasting only as long as possession is retained and terminating when possession of the goods is voluntarily delivered.  UCC § 7-209(e).

A carrier has a lien on the goods covered by a bill of lading or on the proceeds thereof in its possession for charges after the date of the carrier's receipt of the goods for storage or transportation, including demurrage and terminal charges, and for expenses necessary for

1    preservation of the goods incident to their transportation.  UCC § 7-307(a).  The carrier's lien on

2    a debtor's inventory is superior to the perfected lien of a secured creditor with a financing

3    statement.  *In re Sharon Steel Corp.*, 176 B.R. 384, 390 (Bankr.W.D.Pa.1995); UCC § 9-333(b)

4    ("a possessory lien on goods has priority over a security interest in the goods unless the lien is

5    created by a statute that expressly provides otherwise.").  However, a carrier's lien is purely

6    possessory, and the lien is lost when the carrier voluntarily delivers the goods.  UCC § 7-307(c);

7    *In re Bill's Dollar Stores, Inc.*, 164 B.R. 471, 477 (Bankr.D.Del.1994).

8    Nonetheless, the filing of the Debtor's petition creates a bankruptcy estate comprised of

9    all legal or equitable interests of the Debtor in property, wherever located and by whomever

10    held, and carriers and warehouses must deliver all such property to the Debtor.  11 U.S.C. §§

11    541(a) and 542(a); *Pester Refining Co. v. Mapco Gas Products, Inc. (In re Pester Refinancing*

12    *Co.)*, 845 F.2d 1476, 1485 (8th Cir.1988) (citing *United States v. Whiting Pools, Inc.*, 462 U.S.

13    198, 206-07 (1983)).  Under the Bankruptcy Code, the carrier's and warehouse's right to enforce

14    their liens by withholding delivery is eliminated and replaced by their right to receive adequate

15    protection.  *In re Pester Refinancing Co.)*, 845 F.2d at 1485-86; *Whiting Pools, Inc.*, 462 U.S. at

16    206-07 ("The Bankruptcy Code provides secured creditors various rights, including the right to

17    adequate protection and these rights replace the protection afforded by possession.").

18    Pursuant to 11 U.S.C. § 361, adequate protection for use of estate property may be made

19    in the form of cash payments, replacement liens, or granting other relief.  11 U.S.C. § 361.

20    Pursuant to the Supreme Court case of *United Savings Association v. Timbers of Inwood Forest*

21    *Associates*, 108 S.Ct. 626, 629 (1988) ("*Timbers*") and subsequent case law, the property interest

22    that a debtor must adequately protect pursuant to sections 361(1) and (2) of the Bankruptcy Code

23    is only the value of the lien that secures the creditor's claim.  108 S.Ct. at 630.  *See also In re*

24    *McCombs Properties VI, Ltd.*, 88 B.R. 261, 266 (Bankr.C.D.Cal.1988) ("*McCombs*").  While

25    protection of a secured creditor's interest in property is required, protection for the entire bundle

26    of rights is not required.  *In re Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 108 S.Ct.

27    626 (1988).  Adequate protection guards against the diminution in the value of the collateral.  *Id.*

28

1   at 370; *Orix Credit Alliance, Inc. v. Delta Resources, Inc. (In re Delta Resources, Inc.)*, 54 F.3d

2   722, 730 (11th Cir.1995) ("creditor's interest in property which must be adequately protected

3   encompasses the decline in the value of the collateral only"); *First Federal Bank of California v.*

4   *Weinstein (In re Weinstein)*, 227 B.R. 284, 296 (9th Cir.B.A.P.1998) ("Adequate protection is

5   provided to safeguard the creditor against depreciation in the value of its collateral during the

6   reorganization process. . . . Thus, the amount by which the collateral depreciates is the amount of

7   adequate protection to which the secured creditor is entitled.")

8          Here, the value of Possessory Lien Creditors' collateral will decrease with every

9   shipment of the Debtor's goods and inventory that leaves their possession because the

10  Possessory Liens on the collateral are perfected only to the extent that the inventory and goods

11  remain in their possession.   To adequately protect the Possessory Lien Creditors from the

12  decreasing value of their collateral, the Debtor proposes to make cash payments to these

13  creditors in the ordinary course of business, which will be credited against and reduce the

14  Possessory Lien Creditors' prepetition claims, as set forth in the Debtor's budget, which is

15  subject to Court approval in a separate and concurrently filed motion.   The application of

16  adequate protection payments to pay down prepetition secured claims is allowed where there is

17  no depreciation in collateral.   *In re Weinstein*, 227 B.R. at 297.  Here, while the volume of the

18  collateral is decreasing as goods leave ships, trucks, and warehouses and are delivered to the

19  Debtor's stores, the value of the collateral is not depreciating.   Thus, it is appropriate to apply

20  the adequate protection payments to reduce the secured claims.

21         In addition to the cash payments, the Possessory Lien Creditors will be adequately

22  protected by replacement liens on post-petition inventory and goods in their possession, to the

23  same validity, priority, and extent as their existing prepetition liens.     Additionally, the

24  Possessory Lien Creditors are adequately protected by the Debtor's continuation of its business.

25  Courts have determined that a debtor's continued business operations can constitute the adequate

26  protection of a secured creditor.  *See*, *Matter of Pursuit Athletic Footwear, Inc.*, 193 B.R. 713

27  (Bankr.D.Del.1996);  *In re Newark Airport/Hotel Ltd. Partnership*, 156 B.R. 444, 450

28

1  (Bankr.D.N.J.1993) *affirmed*, 155 B.R. 93; *In re Dynaco*, 162 B.R. 389, 394-95

2  (Bankr.D.N.H.1993); *In re Immenhausen Corp.*, 164 B.R. 347, 352 (Bankr.M.D.Fla.1994). The

3  value of goods in the possession of the Possessory Lien Creditors, as expressed in the table,

4  *infra*, of this Motion is the inventory value at cost. If sold through Anna's stores, it will be worth

5  considerably more. As long as the Debtor can continue to operate, it can sell the goods and

6  inventory at retail value, which is higher than liquidation value to be received from a

7  warehouseman's or carrier's foreclosure sale under the UCC. Further, the Debtor's sales will

8  provide more cash for the Debtor to make monthly payments, provide cash to operate, and

9  ultimately, provide cash to fund the reorganization, and pay the Possessory Lien Creditors and

10  other creditors of the estate.

11      Based on the foregoing, the Debtor respectfully submits that the relief requested in the

12  Motion should be granted.

13  **B.    The Procedural Requirements Regarding Approval of this Emergency Motion Have Been Satisfied.**

14      Pursuant to Bankruptcy Rule 4001(a)(1), the Debtor is required to serve a copy of the

15  Motion on the 20 largest unsecured creditors and any other entity that the Court directs.

16  Pursuant to Bankruptcy Rule 4001(a)(1), the Debtor is required to serve a copy of the Motion on

17  the 20 largest unsecured creditors and any other entity that the Court directs. By way of a

18  concurrently filed motion to limit notice, the Debtor has requested permission to serve the

19  Motion by way of a notice and website link to the Motion. In order to provide maximum notice

20  of this Motion, concurrently with the filing of this Motion with the Court, the Debtor has served

21  a notice of hearing on the Motion, which contains a website address which any party can visit

22  and obtain a copy of the Motion, upon the Possessory Lien Creditors, the Office of the United

23  States Trustee, all secured creditors and their counsel (if known), the 20 largest unsecured

24  creditors of the Debtor and parties requesting special notice via overnight mail. Hard copies of

25  this Motion are available upon request to the Debtor's proposed counsel whose contact

26  information is located on the upper-left hand corner of this Motion.

27  / / /

28

1    Pursuant to Bankruptcy Rule 4001(a)(2), the Court may grant relief on an *ex parte* basis

2  to condition the use of property of the estate under § 363(e) without prior notice if (A) there is a

3  clear showing of immediate and irreparable loss before notice can be given to adverse parties and

4  (B) there is evidence that notice was attempted to be given but could not be given in time.  The

5  Debtor is not seeking *ex parte* relief, but, to the extent *ex parte* relief must be granted, the Debtor

6  submits that the Motion and supporting declarations provide competent bases for such relief.

7    The Debtor's supply chain involves a complex global system of purchase orders from

8  across the world, international shipments of inventory on ocean carriers, receipt at ports, storage at

9  warehouses, and delivery by land carriers.  At each stage, these various carriers and warehouses

10  hold possessory liens by way of contractual liens, warehouse liens, and carrier's liens by way of

11  documents of title, warehouse receipts, and bills of lading.  The exercise of these possessory lien

12  rights and withholding of inventory would be extremely disruptive to the Debtor's business and would

13  severely reduce the value of the Debtor's enterprise, whether as a going concern or in an orderly liquidation.

14  For the preservation of the estate, it is imperative that the Debtor's logistics, shipment, storage, and

15  delivery of inventory continue unimpaired.

16    ### III.    CONCLUSION

17    **WHEREFORE**, the Debtor respectfully requests that the Court hold a hearing on the

18  Motion on an emergency basis and enter an order:

19    1.    Granting this Motion on an emergency basis;

20    2.    Finding that notice was good and proper;

21    3.    Authorizing the Debtor to provide adequate protection to the Possessory Lien

22      Creditors, as set forth in the Motion and as set forth in the Debtor's budget, which

23      is subject to Court approval in a separate and concurrently filed motion; and

24  / / /

25  / / /

26  / / /

27  / / /

28

15

4.      Granting such other and further relief as the Court deems just and proper.

Dated: June 15, 2015                    ANNA'S LINENS, INC.

By:   */s/ John-Patrick M. Fritz*
                            DAVID B. GOLUBCHIK
                            EVE H. KARASIK
                            JULIET Y. OH
                            JOHN-PATRICK M. FRITZ
                            LEVENE, NEALE, BENDER,
                                  YOO & BRILL L.L.P.
                            Proposed Attorneys for Debtor and
                            Debtor in Possession

16

**EXHIBIT "1"**

1  DAVID B. GOLUBCHIK (SBN 185520)
   EVE H. KARASIK (SBN 155356)
2  JULIET Y. OH (SBN 211414)
   JOHN-PATRICK M. FRITZ (SBN 245240)
3  LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
   10250 Constellation Boulevard, Suite 1700
4  Los Angeles, California 90067
   Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
5  Email: DBG@LNBYB.COM; EHK@LNBYB.COM;
6          JYO@LNBYB.COM; JPF@LNBYB.COM

7
   Proposed Attorneys for Chapter 11 Debtor
8  and Debtor in Possession

9

10              **UNITED STATES BANKRUPTCY COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
11                   **SANTA ANA DIVISION**

12

13  In re:                              ) Case No. 8:15-bk-13008-TA
                                        )
14  ANNA'S LINENS, INC.,                ) Chapter 11
                                        )
15                   Debtor.            )
                                        )
16                                      ) **ORDER AUTHORIZING THE DEBTOR**
                                        ) **TO PROVIDE ADEQUATE**
17                                      ) **PROTECTION FOR WAREHOUSE**
                                        ) **LIENS AND CARRIER LIENS**
18                                      )
                                        )
19                                      ) <u>Emergency Hearing</u>:
                                        ) DATE:      June 16, 2015
20                                      ) TIME:      2:00 p.m.
                                        ) PLACE:    Courtroom 5B
21                                      )                411 West Fourth Street
                                        )                Santa Ana, California
22                                      )
                                        )
23                                      )
                                        )
24                                      )
                                        )
25                                      )
                                        )
26                                      )

27

28

At the above-referenced date, time and location, the Honorable Theodor C. Albert, United States Bankruptcy Judge for the Central District of California (the "Court"), held an emergency hearing on the *Debtor's Emergency Motion for an Order Authorizing the Debtor to Provide Adequate Protection for Warehouse Liens and Carrier Liens* (the "Motion") filed by Anna's Linens, Inc. (the "Debtor"), the debtor and debtor in possession in the above-captioned bankruptcy case.  Appearances were made as set forth on the record of the Court.

Upon consideration of the Notice of the Motion, the Motion, the Memorandum of Points and Authorities in support of the Motion, the declarations in support of the Motion, including the declaration of J.E. Rick Bunka, evidence duly admitted by the Court in support of the Motion, the arguments and statements of counsel made on the record at the hearing on the Motion, the record in the case, the docket in the case, and for good cause appearing, therefor,

**IT IS HEREBY ORDERED AS FOLLOWS:**

1.     Notice of the Motion was good and proper.

2.     The Motion is granted on a final basis.

3.     The Debtor is authorized to provide the Possessory Lien Creditors, as that term is defined in the Motion, with adequate protection as set forth in the Motion.

4.     The Debtor is authorized to make cash payments in the ordinary course of business to apply to and reduce the Possessory Lien Creditors' secured claims.

5.     Notwithstanding anything to the contrary contained herein, any payments to be made, or authorization contained hereunder, shall be subject to the terms and provisions hereof and subject to compliance with any Financing Order and any Budget approved thereunder.  To the extent there is any conflict between this Order and any Financing Order, or the Budget, the terms of such Financing Order or the Budget shall control.

**IT IS SO ORDERED.**

### ###

1

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled **DEBTOR'S EMERGENCY MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTOR TO PROVIDE ADEQUATE PROTECTION FOR WAREHOUSE LIENS AND CARRIER LIENS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **June 15, 2015**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Dustin P Branch    dustin.branch@kattenlaw.com, jessica.mickelsen@kattenlaw.com;brian.huben@kattenlaw.com;adelle.shafer@kattenlaw.com;donna.carolo@kattenlaw.com
- David B Golubchik    dbg@lnbyb.com, dbg@ecf.inforuptcy.com
- Michael J Hauser    michael.hauser@usdoj.gov
- Eve H Karasik    ehk@lnbyb.com
- Lindsey L Smith    lls@lnbyb.com, lls@ecf.inforuptcy.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

**2.  SERVED BY UNITED STATES MAIL**: On **June 15, 2015**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ *Service information continued on attached page*

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **June 15, 2015**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

***Served via Attorney Service***
Hon. Theodor C. Albert
United States Bankruptcy Court
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5085 / Courtroom 5B
Santa Ana, CA 92701-4593

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| June 15, 2015 | Stephanie Reichert | /s/ Stephanie Reichert |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                      **F 9013-3.1.PROOF.SERVICE**