DAVID B. GOLUBCHIK (SBN 185520)
EVE H. KARASIK (SBN 155356)
JULIET Y. OH (SBN 211414)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234; Facsimile: (310) 229-1244
Email: dbg@lnbyb.com, ehk@lnbyb.com, jyo@lnbyb.com

Proposed Attorneys for Chapter 11 Debtor
and Debtor in Possession

**FILED & ENTERED**

**AUG 04 2015**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY steinber   DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

In re

ANNA'S LINENS, INC.,

Debtor.

Case No. 8:15-bk-13008-TA

Chapter 11

**FINAL ORDER:**
**(I)    AUTHORIZING DEBTOR TO (A)**
**OBTAIN POST-PETITION FINANCING**
**PURSUANT TO 11 U.S.C. §§ 105, 361, 362,**
**364(c), 364(d)(1) AND 364(e), AND (B)**
**UTILIZE CASH COLLATERAL**
**PURSUANT TO 11 U.S.C. § 363;**
**(II)    GRANTING ADEQUATE PROTECTION**
**TO PRE-PETITION SECURED**
**LENDERS PURSUANT TO 11 U.S.C. §§**
**361, 362, 363 AND 364; AND**
**(III)  GRANTING RELATED RELIEF**

DATE:        July 22, 2015
TIME:        10:00 a.m.
PLACE:     Courtroom 5B
                  411 West Fourth Street
                  Santa Ana, California

1

1    THIS MATTER having come before the Court upon the motion (the "**DIP Motion**") by

2    Anna's, Linens, Inc., a Delaware corporation (the "**Borrower**" or the "**Debtor**"), in the above-

3    captioned Chapter 11 case (the "**Chapter 11 Case**"), pursuant to sections 105, 361, 362, 363,

4    364(c)(1), 364(c)(2), 364(c)(3), 364(d) and 507 of title 11 of the United States Code, (11 U.S.C.

5    §§ 101, *et seq.*, as amended, the "**Bankruptcy Code**"), Rules 2002, 4001 and 9014 of the

6    Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seeking entry of the *Interim*

7    *Order (I) Authorizing Debtor to (A) Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§*

8    *105, 361, 362, 364(c), 364(d)(1) and 364(e), and (B) Utilize Cash Collateral Pursuant to 11*

9    *U.S.C. § 363; (II) Granting Adequate Protection to Pre-petition Secured Lenders Pursuant to 11*

10   *U.S.C. §§ 361, 362, 363, and 364; (III) Scheduling a Final Hearing Pursuant to Bankruptcy*

11   *Rules 4001(b) and 4001(c); and (IV) Granting Related Relief* [Docket No. 107] (the "**Interim**

12   **Order**") and this Order (the "**Final Order**" and together with the Interim Order, the "**DIP**

13   **Orders**"), *inter alia*:

14        (i)    authorizing the Borrower to obtain a senior secured super-priority revolving credit

15   facility (the "**DIP Facility**"), pursuant to the terms and conditions of that certain Senior Secured

16   Super-Priority Debtor-In-Possession Credit Agreement (as amended, supplemented, restated, or

17   otherwise modified from time to time, the "**DIP Credit Agreement**") by and among the Debtor,

18   the lenders party thereto (the "**DIP Lenders**" and each a "**DIP Lender**"), and Salus Capital

19   Partners, LLC, as Administrative and Collateral Agent (in such capacity, the "**DIP Agent**" and

20   together with the DIP Lenders, the "**DIP Secured Parties**") for the DIP Lenders, substantially in

21   the form of **Exhibit 1** attached to the Interim Order as amended by the Waiver And First

22   Amendment To Senior Secured Super-Priority Debtor-In-Possession Credit Agreement(the

23   "**First Amendment**") attached hereto as **Exhibit A**; and

24        (ii)    authorizing the Debtor to execute and deliver the DIP Credit Agreement and all

25   other related documents and agreements, including notes, security agreements, fee letters,

26   deposit account control agreements, pledge agreements, guaranties, credit card notifications, and

27   promissory notes (collectively, the "**DIP Loan Documents**") and to perform such other acts as

28

may be necessary or desirable in connection with the DIP Loan Documents;[1] and

(iii)    granting allowed superpriority administrative expense claim status in each of the Chapter 11 Case and any Successor Case (as defined herein) to all obligations owing under the DIP Credit Agreement and the other DIP Loan Documents to the DIP Secured Parties (collectively, and including all "Obligations" as described in the DIP Credit Agreement, the "**DIP Obligations**"), subject to the priorities set forth herein; and

(iv)    authorizing the Debtor to use in accordance with the Budget (as defined herein) "Cash Collateral," as defined in section 363(a) of the Bankruptcy Code, that the Debtor is holding or may obtain, pursuant to the Bankruptcy Code Section 361 and 363 and Bankruptcy Rules 4001(b) and 6004; and

(v)    granting to the DIP Agent for the benefit of the DIP Secured Parties automatically perfected security interests in and liens on all of the DIP Collateral (as defined herein), including, without limitation, all property constituting Cash Collateral, which liens shall be subject to the priorities set forth herein; and

(vi)    authorizing and directing the Debtor to pay the principal, interest, fees, expenses and other amounts payable under each of the DIP Loan Documents as they become due, including, without limitation, continuing commitment fees, closing fees, servicing fees, audit fees, structuring fees, monitoring and exit fees, the reasonable fees and disbursements of the DIP Secured Parties' attorneys, advisers, accountants, and other consultants, and all related expenses of the DIP Secured Parties, all to the extent provided by and in accordance with the terms of the respective DIP Loan Documents and the DIP Orders; and

(vii)    authorizing and directing the Debtor to pay in full the Prepetition Obligations (as defined herein) upon entry of the Final Order, subject to the rights of parties in interest described in paragraphs 33 and 34 of this Final Order; and

(viii)    providing adequate protection to the Prepetition Secured Creditors (as defined herein) to the extent set forth herein; and

---

[1] Capitalized terms used herein but not defined have the meanings given to them in the DIP Loan Documents.

(ix)    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents, the Interim Order and this Final Order; and

(x)    granting related relief.

The Court having considered the DIP Motion, the *Declaration of J.E. Rick Bunka in Support of Debtor's Emergency "First Day" Motions* (the "**First Day Declaration**"), including the DIP Motion, the exhibits attached thereto, the DIP Loan Documents, and the evidence submitted or adduced and the arguments of counsel made at the interim hearing held on the DIP Motion on June 16, 2015 (the "**Interim Hearing**") and at the final hearing held on the DIP Motion on July 22, 2015 (the "**Final Hearing**"); and notice of each of the Interim Hearing and Final Hearing having been given in accordance with Bankruptcy Rules 4001(b), (c) and (d) and 9014; and the Final Hearing to consider the relief requested in the DIP Motion having been held and concluded; and all objections, if any, to the relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that, pursuant to Bankruptcy Rule 4001(c)(2), granting the relief requested is necessary to avoid immediate and irreparable harm to the Debtor and its estate, and otherwise is fair and reasonable and in the best interests of the Debtor, its estate, and its creditors and equity holders, and is essential for the continued operation and sale of the Debtor's business; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING AND THE FINAL HEARING BY THE DEBTOR, INCLUDING THE SUBMISSION OF DECLARATIONS AND THE REPRESENTATIONS OF COUNSEL, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW ON AN INTERIM BASIS PENDING FINAL HEARING THEREON:[2]

A.    *Petition Date*.    On June 14, 2015 (the "**Petition Date**"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy

---

[2] Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact.

1   Court for the Central District of California (the "**Court**") commencing this Chapter 11 Case.

2       B.      *Debtor in Possession*.  The Debtor is continuing in the management and operation

3   of its business and properties as debtor in possession pursuant to sections 1107 and 1108 of the

4   Bankruptcy Code.  No trustee or examiner has been appointed in this Chapter 11 Case.

5       C.      *Jurisdiction and Venue*.  This Court has jurisdiction, pursuant to 28 U.S.C.

6   §§ 157(b) and 1334, over these proceedings, and over the persons and property affected hereby.

7   Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).

8   Venue for the Chapter 11 Case and proceedings on the DIP Motion is proper in this district

9   pursuant to 28 U.S.C. §§ 1408 and 1409.

10      D.      *Committee Formation*.  On June 24, 2015, the Office of the United States Trustee

11  (the "**U.S. Trustee**") filed the *Appointment and Notice of Appointment of Committee of Creditors*

12  *Holding Unsecured Claims* [Docket No. 157] appointing the Committee of Unsecured Creditors

13  (the "**Committee**").

14      E.      *Debtor's Stipulations*.  After consultation with its attorneys and financial advisors,

15  and without prejudice to the rights of parties in interest as set forth in paragraph 33 and 34

16  herein, the Debtor admits, stipulates, acknowledges and agrees that (collectively, paragraphs E(i)

17  through E(v) below are referred to herein as the "**Debtor's Stipulations**"):

18          (i)     *Prepetition Credit Documents*.  As of the Petition Date, the Debtor had

19  outstanding secured debt to Salus Capital Partners, LLC, as administrative agent and collateral

20  agent (in such capacity, the "**Prepetition Agent**") for various lenders (the "**Prepetition**

21  **Lenders**") and collectively, with the Prepetition Agent, the "**Prepetition Secured Creditors**"

22  and each a "**Prepetition Secured Creditor**"), pursuant to that certain Credit Agreement dated as

23  of July 18, 2014, by and among the Borrower, the Prepetition Agent and Prepetition Lenders (as

24  amended, modified and supplemented from time to time, the "**Prepetition Credit Agreement**"

25  and together with all related documents, instruments, guaranties and agreements, the

26  "**Prepetition Credit Documents**").

27          (ii)    *Prepetition Obligations*.  As of the Petition Date, the aggregate

28  outstanding principal amount (inclusive of the capitalized amounts of early termination and

collateral monitoring fees) owed by the Debtor under the Prepetition Credit Documents was not less than $64,601,622.89 (collectively, together with fees, accrued interest, costs and other charges or amounts paid, incurred or accrued prior to the Petition Date in accordance with the Prepetition Credit Documents, including all "Obligations" as described in the Prepetition Credit Agreement, and all interest, fees, costs and other charges allowable under section 506(b) of the Bankruptcy Code, the "**Prepetition Obligations**").  As more fully set forth in the Prepetition Credit Documents, prior to the Petition Date, the Debtor granted first-priority security interests in and liens on substantially all personal property of the Debtor, including, without limitation, accounts, inventory, equipment and general intangibles (collectively, the "**Prepetition Collateral**")[3] to the Prepetition Agent (for the ratable benefit of the Prepetition Secured Creditors) (collectively, the "**Prepetition Liens**") to secure repayment of the Prepetition Obligations.

(iii)    *Validity, Perfection and Priority of Prepetition Liens and Obligations*. The Debtor acknowledges and agrees that:  (a) as of the Petition Date, the Prepetition Liens on the Prepetition Collateral are valid, binding, enforceable, non-avoidable and properly perfected, (b) as of the Petition Date, the Prepetition Liens have priority over any and all other liens, if any, on the Prepetition Collateral, subject only to certain other liens otherwise permitted by the Prepetition Credit Documents (to the extent any such permitted liens were valid, binding, enforceable, properly perfected, non-avoidable and senior in priority to the Prepetition Liens as of the Petition Date, the "**Prepetition Permitted Liens**") and otherwise had priority over any and all other liens on the Prepetition Collateral;[4] (d) the Prepetition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtor; (e) no offsets, challenges,

---

[3] For the avoidance of doubt, Prepetition Collateral does not include leases of real property.

[4] For purposes of Order, Prepetition Permitted Liens shall include all liens that were valid, senior, enforceable, nonavoidable, and perfected under applicable law as of the Petition Date. Nothing herein shall constitute a finding or ruling by this Court that any such Prepetition Permitted Liens are valid, senior, enforceable, perfected or non-avoidable.  Moreover, nothing shall prejudice the rights of any party in interest including, but not limited, to the Debtor, the DIP Agent, the Prepetition Agent and the Committee to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any such Prepetition Permitted Lien and/or security interest.

1  objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition

2  Liens or the Prepetition Obligations exist, and no portion of the Prepetition Liens or the

3  Prepetition Obligations is subject to any challenge or defense including, without limitation,

4  avoidance, disallowance, disgorgement, recharacterization, or subordination (whether equitable

5  or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (f) the Debtor

6  and its estate have no claims, objections, challenges, causes of actions, and/or choses in action,

7  including without limitation, Avoidance Actions,[5] against any of the Prepetition Secured

8  Creditors or any of their respective affiliates, agents, attorneys, advisors, professionals, officers,

9  directors or employees arising out of, based upon or related to the Prepetition Credit Documents;

10  (g) without limiting any rights of the Committee, including those set forth in paragraphs 33 and

11  34, as of the Petition Date, the value of the Prepetition Collateral securing the Prepetition

12  Obligations exceeded the amount of the Prepetition Obligations, and accordingly the Debtor

13  believes the Prepetition Obligations are allowed secured claims within the meaning of section

14  506 of the Bankruptcy Code, in a principal amount (inclusive of the capitalized amount of the

15  early termination and collateral monitoring fees) of not less than $64,601,622.89 as of Petition

16  Date, together with accrued and unpaid and hereafter accruing interest, fees (including, without

17  limitation, reasonable attorneys' fees and related expenses), costs and other charges.

18            (iv)    *Cash Collateral*.    The Debtor represents that all of the Debtor's cash,

19  including the cash in its deposit accounts, wherever located, whether as original collateral or

20  proceeds of other Prepetition Collateral, constitutes Cash Collateral and is Prepetition Collateral

21  of the Prepetition Secured Creditors.

22            (v)    *Default by the Debtor*.    The Debtor acknowledges and stipulates that the

23  Debtor is in default under the Prepetition Credit Documents.

24        F.    *Findings Regarding the Postpetition Financing*.

25            (i)    *Request for Postpetition Financing*.    The Debtor seeks authority to

26

27  ──────────────
    [5] "**Avoidance Actions**" means all claims and causes of action under Chapter 5 of the
28  Bankruptcy Code including, without limitation, those under sections 502(d), 544, 545, 547,
    548, 550, 552(b) and 553, and state laws of similar import.

(a) enter into the DIP Facility on the terms described herein and in the DIP Loan Documents, (b) repay any remaining balance of the Prepetition Obligations upon entry of the Final Order and as otherwise set forth herein, and (c) use Cash Collateral on the terms described herein to administer its Chapter 11 Case and fund its operations and sale.

(ii)    *Need for Postpetition Financing and Use of Cash Collateral*.    The Debtor's need to use Cash Collateral and to obtain credit pursuant to the DIP Facility is immediate and critical in order to enable the Debtor to continue operations, pursue the sale of its assets and to administer and preserve the value of its estate.  The ability of the Debtor to finance its operations, complete its sale process, maintain business relationships, pay its employees, and protect the value of its assets and estates requires the availability of the DIP Facility and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtor, its estate, its creditors and equity holders, and the possibility for a successful administration of this Chapter 11 Case.  The Debtor does not have sufficient available sources of liquidity and financing to operate its businesses, pursue the sale of its assets or to maintain its properties without the DIP Facility and authorized use of Cash Collateral.

(iii)    *No Credit Available on More Favorable Terms*.    Given its current financial condition, financing arrangements, and capital structure, the Debtor is unable to obtain financing from sources other than the DIP Agent or on terms more favorable than the DIP Facility.  The Debtor has been unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtor has also been unable to obtain credit:  (a) having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the Debtor and its estate that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtor and its estate that is subject to a lien.  Financing on a postpetition basis is not otherwise available without granting the DIP Agent, (1) perfected security interests in and liens on all of the Debtor's existing and after-acquired assets with the priorities set forth herein, (2) superpriority claims, and (3) the other protections set forth in the DIP Orders.

1    (iv)    *Use of Proceeds of the DIP Facility*.  As a condition to entry into the DIP

2   Credit Agreement, the extensions of credit under the DIP Facility and the authorization to use

3   Cash Collateral, the DIP Agent requires, and the Debtor has agreed, that proceeds of the DIP

4   Facility shall be used (a) for the repayment in full in cash of the Prepetition Obligations (other

5   than contingent indemnification obligations) upon entry of the Final Order and (b) in a manner

6   consistent with the terms and conditions of the DIP Loan Documents and in accordance with the

7   budget (a copy of which is attached as **Exhibit B** hereto, as the same may be modified from time

8   to time consistent with the terms of the DIP Loan Documents, and subject to such variances as

9   may be permitted thereby, the "**Budget**"), solely (i) to repay certain Prepetition Obligations

10  owed in connection with the Prepetition Credit Documents, (ii) for general corporate and

11  working capital purposes of the Debtor, in each case to the extent expressly permitted under

12  applicable Law, the Budget and the DIP Loan Documents, including postpetition operating and

13  other expenses of the Chapter 11 Case set forth in the Budget, (ii) to make Prepetition Agent

14  Adequate Protection Payments (as defined herein), and (iv) as otherwise permitted under the DIP

15  Loan Documents.  The repayment of the Prepetition Obligations as set forth herein is necessary,

16  as the Prepetition Agent has not otherwise consented to the use of Cash Collateral or the

17  subordination of its liens to the DIP Liens, and the DIP Agent is not willing to provide the DIP

18  Facility unless the Prepetition Obligations (other than contingent indemnification obligations) are

19  paid in full, in cash upon entry of this Final Order and as otherwise set forth herein.   Such

20  payments will not prejudice the Debtor or its estate, because payment of such amounts is subject

21  to the rights of parties in interest under paragraphs 33 and 34 herein.

22    (v)    *Budget.*  The Debtor has determined that the Budget is reasonable and will

23  allow the Debtor to pursue the Chapter 11 Case without the accrual of unpaid allowed

24  administrative expense and that the Budget includes all reasonable, necessary and foreseeable

25  expenses to be incurred for the period set forth in the Budget.  The Committee reserves any and

26  all rights to dispute the conclusion in the foregoing sentence.

27    (vi)    *Application of Proceeds of DIP Collateral*.  As a condition to entry into

28  the DIP Loan Documents, the extension of credit under the DIP Facility, and the authorization to

use Cash Collateral, the Debtor and the DIP Agent have agreed that the proceeds of DIP Collateral (as defined herein) shall be applied in accordance with paragraph 18 of this Final Order.

G.    *Adequate Protection*.  The Prepetition Agent and the other Prepetition Secured Creditors shall receive (i) subject to the priorities set forth in paragraphs 12 and 13 below, the Adequate Protection Liens (as defined herein) to secure the Prepetition Obligations and Adequate Protection Superpriority Claims (as defined herein) with respect to the Prepetition Obligations and (ii) additional adequate protection in the form of (A) payment of the Prepetition Obligations from the proceeds of the DIP Collateral as set forth in paragraph 18(a) below and (B) payments in the amount of interest (which shall be payable at the non-default contract rate under the Prepetition Credit Agreement), fees, costs, expenses (including attorneys' fees and expenses), indemnities and other amounts with respect to the Prepetition Obligations when due in accordance with the Prepetition Credit Documents (collectively, the "**Prepetition Agent Adequate Protection Payments**"). For the avoidance of doubt, the Adequate Protection Liens and the Adequate Protection Superpriority Claims each shall be junior in all respects to the DIP Liens and the Carve Out (as defined herein), and the Adequate Protection Superpriority Claims are junior in all respects to the DIP Superpriority Claim (as defined herein).

H.    *Section 552(b)*.  In light of the DIP Agent's agreement to subordinate its liens and superpriority claims, as applicable, to the Carve Out, the DIP Agent is entitled to a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code.

I.    *Good Faith of the DIP Agent*.

(i)    *Willingness to Provide Financing*.  The DIP Agent has indicated a willingness to provide financing to the Debtor subject to:  (a) the entry of the Interim Order and this Final Order; (b) approval of the terms and conditions of the DIP Facility and the DIP Loan Documents and the payoff of the Prepetition Obligations; and (c) entry of findings by this Court that such financing is essential to the Debtor's estate, that the DIP Agent is extending credit to the Debtor pursuant to the DIP Loan Documents in good faith, and that the DIP Agent's claims, superpriority claims, security interests, liens, rights, and other protections granted pursuant to the

10

1    DIP Orders and the DIP Loan Documents will have the protections provided in section 364(e) of

2    the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur,

3    amendment, reargument or reconsideration of the Interim Order, the Final Order, or any other

4    order.

5              (ii)    _Business Judgment and Good Faith Pursuant to Section 364(e)_.    The

6    extension of credit under the DIP Facility reflects the Debtor's exercise of prudent business

7    judgment consistent with its fiduciary duties, and is supported by reasonably equivalent value

8    and consideration.  The DIP Facility and the use of Cash Collateral were negotiated in good faith

9    and at arms' length among the Debtor and the DIP Agent.  The use of Cash Collateral and credit

10   to be extended under the DIP Loan Documents shall be deemed to have been so allowed,

11   advanced, made, used or extended in good faith, and for valid business purposes and uses, within

12   the meaning of section 364(e) of the Bankruptcy Code, and the DIP Agent is therefore entitled to

13   the protection and benefits of section 364(e) of the Bankruptcy Code, the Interim Order and the

14   Final Order.

15         J.    _Notice_.  Notice of the Final Hearing and the relief requested in the DIP Motion

16   has been provided by the Debtor, whether by facsimile, email, overnight courier or hand

17   delivery, to certain parties in interest, including:  (i) the U.S. Trustee for the Central District of

18   California; (ii) the Internal Revenue Service; (iii) the parties included on the Debtor's list of

19   twenty (20) largest unsecured creditors; (iv) counsel to the Prepetition Agent; (v) the United

20   States Attorney for the Central District of California; (vi) parties asserting a Lien against the

21   Debtor's assets, (vii) those parties who have filed a notice of appearance and request for service

22   of pleadings in this Chapter 11 Case pursuant to Bankruptcy Rule 2002 and (viii) counsel to the

23   Committee.  The Debtor has made reasonable efforts to afford the best notice possible under the

24   circumstances and such notice is due, good, sufficient and adequate and no other or further

25   notice is or shall be required.

26         Based upon the foregoing findings and conclusions, the DIP Motion and the record

27   before the Court with respect to the DIP Motion, and good and sufficient cause appearing

28   therefor,

**IT IS HEREBY ORDERED** that:

1.    <u>Financing Approved</u>.  The DIP Motion is granted on a final basis, as set forth herein, the DIP Financing (as defined herein) is authorized and approved, and the use of Cash Collateral is authorized, subject to the terms and conditions set forth in this Final Order.

2.    <u>Objections Overruled</u>.  All objections to the DIP Financing to the extent not withdrawn or resolved are hereby overruled on their merits.

**<u>DIP Facility Authorization</u>**

3.    <u>Authorization of the DIP Financing and DIP Loan Documents</u>.  The Debtor is expressly and immediately authorized and empowered (i) to execute and deliver the DIP Loan Documents, (ii) to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of the Interim Order, the Final Order, the DIP Loan Documents, and the Budget, (iii) to deliver all instruments and documents that may be necessary or required for performance by the Debtor under the DIP Facility and the creation and perfection of the DIP Liens described in and provided for by the Interim Order, the Final Order and the DIP Loan Documents, and (iv) subject to the rights of third parties pursuant to paragraphs 33 and 34 below, to (x) grant releases in favor of the Prepetition Secured Creditors and each of their related parties and (y) repay in full in cash of the Prepetition Obligations subject only to the ability of the Court to unwind the repayment of the Prepetition Obligations in the event there is a successful Challenge (as defined herein) to the validity, enforceability, extent, perfection and priority of the Prepetition Secured Creditors' claims or liens.  Notwithstanding anything to the contrary set forth herein, the DIP Loan Documents are hereby modified to reduce the obligation on the part of the Debtor to pay any fees associated with the DIP Facility, including, without limitation, closing fees, unused facility fees, continuing commitment fees, monitoring and exit fees, servicing fees, audit fees, and structuring fees (collectively, the "**<u>DIP Fees</u>**") by seventy five (75%) of the respective amounts set forth in the DIP Loan Documents; <u>provided</u>, that the pay-off amount of the DIP Obligations will be adjusted to reflect a one hundred percent (100%) reduction of the DIP Fees in the event the Committee does not assert a Challenge (as defined herein).  The Debtor is hereby authorized to pay the principal, interest, fees, expenses and other amounts described in the DIP Loan

12

Documents, as modified by this Final Order, as such become due and without need to obtain further Court approval, including, without limitation, closing fees, unused facility fees, continuing commitment fees, monitoring and exit fees, servicing fees, audit fees, structuring fees, the reasonable fees and disbursements of the DIP Agent's and the DIP Lenders' attorneys, advisers, accountants, and other consultants, all to the extent provided in the DIP Loan Documents, with invoices to be provided in accordance with paragraph 26 below, to the extent that there are sufficient proceeds of the DIP Collateral (as defined below) to satisfy such claims after payment of or reserve for the Carve Out. All collections and proceeds, whether from ordinary course collections, asset sales, debt issuances, insurance recoveries, condemnations or otherwise, will be deposited and applied as required by the Interim Order, the Final Order and the DIP Loan Documents. Upon execution and delivery, the DIP Loan Documents shall represent valid and binding, and joint and several, obligations of the Debtor, enforceable against the Debtor and its estate in accordance with their terms.

4.    <u>Authorization to Borrow</u>.    Until the Termination Date (as defined in the DIP Credit Agreement), and subject to the terms, conditions, limitations on availability and reserves set forth in the DIP Loan Documents, the DIP Facility, the Interim Order, and this Final Order and in order to prevent immediate and irreparable harm to the Debtor's estate, the Debtor is hereby authorized to request extensions of revolving credit under the DIP Facility up to an aggregate principal amount of $80,000,000 (or such lesser amount as provided in the definition of Aggregate Commitments) at any one time outstanding (the "**<u>DIP Financing</u>**").

5.    <u>DIP Obligations</u>.    The DIP Loan Documents, the Interim Order and this Final Order shall constitute and evidence the validity and binding effect of the Debtor's DIP Obligations, which DIP Obligations shall be enforceable against the Debtor, its estate and any successor thereto, including without limitation, any trustee or other estate representative appointed in the Chapter 11 Case, or any case under Chapter 7 of the Bankruptcy Code upon the conversion of the Chapter 11 Case (collectively, "**<u>Successor Case</u>**"). Upon entry of the DIP Orders, the DIP Obligations include all loans and any other indebtedness, indemnities or obligations, contingent or absolute, which may now or from time to time be owing by the Debtor

to the DIP Agent under the DIP Loan Documents, the Interim Order, and this Final Order, including, without limitation, all principal, accrued interest, costs, fees, expenses, indemnities and other amounts owed pursuant to the DIP Loan Documents as modified hereby, and shall be obligations of the Debtor in all respects.

      6.    Postpetition Liens and Collateral.

      (a)    Effective immediately upon the entry of the Interim Order and this Final Order, pursuant to sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Agent (for itself and the ratable benefit of the DIP Lenders) is hereby granted, continuing valid, binding, enforceable, non-avoidable and automatically and properly perfected postpetition security interests in and liens on (collectively, the "**DIP Liens**") any and all presently owned and hereafter acquired assets and real and personal property of the Debtor (other than Avoidance Actions or Commercial Tort Claims), including, without limitation, the following (the "**DIP Collateral**"):

      (i)    all Accounts[6];

      (ii)    all Goods, including Equipment, Inventory and Fixtures;

      (iii)    all Documents, Instruments and Chattel Paper;

      (iv)    all Letters of Credit and Letter-of-Credit Rights;

      (v)    all Securities Collateral;

      (vi)    all Investment Property;

      (vii)    all Intellectual Property Assets;

      (viii)    [reserved];

      (ix)    all General Intangibles (including, without limitation, all Payment Intangibles);

      (x)    all Deposit Accounts (including, without limitation, the Concentration Account);

---

[6] All defined terms in the description of DIP Collateral shall have the meanings ascribed thereto in the DIP Loan Documents. All terms not specifically defined in the DIP Loan Documents shall have the meanings ascribed to such terms in Article 8 or 9 of the Uniform Commercial Code, as applicable.

1     (xi)     all Supporting Obligations;

2     (xii)    all money, cash or cash equivalents;

3     (xiii)   all credit balances, deposits and other property now or hereafter held or

4   received by or in transit to the DIP Agent or at any other depository or other institution from or

5   for the account of the Debtor, whether for safekeeping, pledge, custody, transmission, collection

6   or otherwise;

7     (xiv)   all proceeds of leases of real property and all owned real property;[7]

8     (xv)    [reserved];

9     (xvi)   [reserved];

10     (xvii)  to the extent not otherwise described above, all receivables and all present

11   and future claims, rights, interests, assets and properties recovered by or on behalf of the Debtor;

12     (xviii) all books, records, and information relating to any of the foregoing and/or

13   to the operation of the Debtor's business, and all rights of access to such books, records, and

14   information, and all property in which such books, records and information are stored, recorded

15   and maintained; and

16     (xix)   to the extent not otherwise included or specifically excluded, all other

17   personal property of the Debtor (excluding Avoidance Actions or the proceeds thereof and

18   excluding Commercial Tort Claims), whether tangible or intangible and all Proceeds and

19   products of each of the foregoing and all accessions to, substitutions and replacements for, and

20   rents, profits and products of each of the foregoing, and any and all proceeds of any insurance,

21   indemnity, warranty or guaranty payable to the Debtor from time to time with respect to any of

22   the foregoing.

23     (b)     Notwithstanding any of the relief requested in the DIP Motion or any of

24   the terms of the Interim Order or this Final Order granting the DIP Motion, the DIP Liens and

25   the DIP Superpriority Claim shall not extend to the Debtor's bank accounts or the cash on

26

27   ─────────────
[7]   For the avoidance of doubt, the DIP Liens extend only to the proceeds of leased real property

28   and are not direct liens on the Debtor's leases of real property unless such liens are expressly
     permitted pursuant to the underlying lease documents.

deposit therein held at MUFG Union Bank, specifically the Letter of Credit Cash Collateral Account (Account No. 45001-84936) and the Change Order Cash Collateral Account (Account No. 45010-64754); provided, that (a) the amount in the Letter of Credit Cash Collateral Account shall not exceed $5,100,000 plus Post-Petition accrued interest, and the amount in the Change Order Cash Collateral Account shall not exceed $31,000 plus Post-Petition accrued interest, and (b) the DIP Liens and DIP Superpriority Claim will cover any cash released from such accounts back to the Debtor. Except as otherwise ordered by this Court, MUFG Union Bank's alleged liens on these accounts and on the cash on deposit therein will continue to have the same validity, priority, and extent as existed before the Petition Date.

(c)    Effective upon the entry of each of the DIP Orders, (i) all DIP Liens and the Carve Out shall each be and remain at all times senior to the Prepetition Liens, and all existing blocked account agreements, deposit account control agreements, securities account control agreements, credit card acknowledgements, credit card agreements, collateral access agreements, landlord agreements, warehouse agreements, bailee agreements, carrier agency agreements, customs broker agency agreements, subordination agreements and freight forwarder agreements constituting Prepetition Credit Documents, and all existing Uniform Commercial Code filings and all existing filings with the United States Patent and Trademark Office or the United States Copyright Office with respect to the recordation of an interest in the intellectual property of the Debtor which were filed by the Prepetition Agent, shall be deemed to be delivered and/or filed in connection with the DIP Facility as well as the Prepetition Credit Agreement, shall constitute DIP Credit Documents (as well as Prepetition Credit Documents) and shall remain in full force and effect without any further action by the Debtor, the DIP Agent or any other person, (ii) any and all references in any such agreements or documents to the "Credit Agreement" shall hereafter be deemed to mean and refer to the DIP Credit Agreement and the Prepetition Credit Agreement, and (iii) any and all references in any such agreements or documents to the "Loan Documents" shall hereafter be deemed to mean and refer to the DIP Loan Documents or Prepetition Credit Documents, in each case as amended, modified, supplemented or restated and in effect from time to time.

1      7.      <u>DIP Lien Priority</u>.

2          (a)      *DIP Liens*.  The DIP Liens shall be junior only to the (i) Carve Out and (ii)

3   the Prepetition Permitted Liens and shall otherwise be senior in priority and superior to the

4   Prepetition Liens, the Adequate Protection Liens (as defined herein) and Adequate Protection

5   Superpriority Claims (as defined herein) and any other security, mortgage, collateral interest, lien

6   or claim on or to any of the DIP Collateral.

7          (b)      Other than as set forth herein, the DIP Liens shall not be made subject to

8   or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Chapter 11

9   Case or any Successor Case.  The DIP Liens shall be valid and enforceable against any trustee or

10  other estate representative appointed in the Chapter 11 Case or any Successor Case, upon the

11  conversion of the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code (or in any

12  other Successor Case), and/or upon the dismissal of the Chapter 11 Case or Successor Case.  The

13  DIP Liens shall not be subject to challenge under sections 510, 549, or 550 of the Bankruptcy

14  Code.  No lien or interest avoided and preserved for the benefit of the estate pursuant to section

15  551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

16         (c)      *Prepetition Liens*.  For the avoidance of doubt, the Prepetition Liens shall

17  be junior to the (i) Carve Out; (ii) the DIP Liens; (iii) the DIP Superpriority Claim, (iv) the

18  Adequate Protection Liens; (v) the Adequate Protection Superpriority Claims; and (vi)

19  Prepetition Permitted Liens.

20     8.      <u>DIP Superpriority Claim</u>.

21         (a)      *DIP Agent Superpriority Claim*.  Upon entry of each of the DIP Orders,

22  the DIP Agent (for itself and the ratable benefit of the DIP Lenders) is hereby granted, pursuant

23  to section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense

24  claim in the Chapter 11 Case and any Successor Case (collectively, the "**DIP Superpriority**

25  **Claim**") for all DIP Obligations.  The DIP Superpriority Claim shall be subordinate only to the

26  DIP Liens, the Carve Out and Prepetition Permitted Liens, and shall otherwise have priority over

27  any and all administrative expenses of the kinds specified in or ordered pursuant to sections

28  503(b) and 507(b) of the Bankruptcy Code, as provided under section 364(c)(1) of the

17

1    Bankruptcy Code, provided that the DIP Superpriority Claim shall not be payable from or have

2    recourse to Avoidance Actions or Commercial Tort Claims, or the proceeds thereof.

3         (b)    *Priority of DIP Superpriority Claim.* The DIP Superpriority Claim shall be

4    payable from and have recourse to all DIP Collateral, subject only to the payment in full in cash

5    of the DIP Obligations, the Carve Out and amounts secured by the Prepetition Permitted Liens to

6    the extent of their interest in any collateral.

7         9.    <u>No Obligation to Extend Credit</u>.  The DIP Agent and the DIP Lenders shall not

8    have any obligation to make any loan or advance under the DIP Loan Documents unless all of

9    the conditions precedent to the making of such extension of credit or the issuance of such letter

10    of credit under the applicable DIP Loan Documents, the Interim Order and the Final Order have

11    been satisfied in full or waived by the DIP Agent.

12         10.    <u>Use of DIP Facility Proceeds</u>.  From and after the Petition Date, the Debtor shall

13    use advances of credit under the DIP Facility only for the purposes specifically set forth in the

14    Interim Order, the Final Order, the DIP Loan Documents and the Budget and shall be subject at

15    all times to compliance with the Budget subject to permitted variances and the terms of the Final

16    Order.

17    **<u>Authorization to Use Cash Collateral</u>**

18         11.    <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of the

19    Interim Order, the Final Order and the DIP Loan Documents, and in accordance with the Budget

20    and subject to such variances as may be permitted under the DIP Credit Agreement, the Debtor is

21    authorized to use Cash Collateral until the Termination Date; <u>provided</u>, <u>however</u>, that during the

22    Remedies Notice Period (as defined herein) the Debtor may use Cash Collateral in accordance

23    with the terms and provisions of the Budget solely to meet accrued but unpaid operating

24    expenses through the Termination Date, and payroll and related expenses.  Nothing in the

25    Interim Order or this Final Order shall authorize the disposition of any assets of the Debtor or its

26    estate outside the ordinary course of business (which shall be subject to further Orders of this

27    Court), or Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as

28    permitted in the Interim Order, this Final Order, the DIP Loan Documents, and in accordance

1   with the Budget.

2        12.        Adequate Protection Payments and Adequate Protection Liens.

3        (a)        The Prepetition Agent and the other Prepetition Secured Creditors shall

4   receive adequate protection in the form of the Prepetition Agent Adequate Protection Payments.

5        (b)        *Prepetition Agent – Adequate Protection Liens*.  The Prepetition Agent

6   (for the ratable benefit of the Prepetition Secured Creditors) is hereby granted valid and perfected

7   replacement and additional security interests in, and liens on all of the Debtor's right, title and

8   interest in, to and under all DIP Collateral (the "**Adequate Protection Liens**") solely to secure

9   any diminution in the value of the Prepetition Secured Creditors' interests in the Prepetition

10   Collateral.  The Adequate Protection Liens granted to the Prepetition Agent shall secure only the

11   Prepetition Obligations.    The Adequate Protection Liens are and shall be valid, binding

12   enforceable and fully perfected as of the date hereof and subordinate and subject only to (i) the

13   DIP Liens, (ii) the Prepetition Permitted Liens, and (iii) the Carve Out.

14        (c)        *Treatment of Adequate Protection Liens*.  Other than as set forth herein,

15   the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or with

16   any lien or security interest heretofore or hereinafter granted in the Chapter 11 Case or any

17   Successor Case.   The Adequate Protection Liens shall be valid and enforceable against any

18   trustee or other estate representative appointed in the Chapter 11 Case or any Successor Case,

19   upon the conversion of the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code

20   (or in any other Successor Case), and/or upon the dismissal of the Chapter 11 Case or Successor

21   Case.

22        13.        Adequate Protection Superpriority Claims.

23        (a)        *Superpriority Claim of Prepetition Agent*.  As further adequate protection

24   of the interests of the Prepetition Agent with respect to the Prepetition Obligations (including,

25   without limitation, the Surviving Obligations), the Prepetition Agent (for the ratable benefit of

26   the Prepetition Secured Creditors) is hereby granted an allowed administrative claim against the

27   Debtor's estate under sections 503 and 507(b) of the Bankruptcy Code (the "**Adequate**

28   **Protection Superpriority Claims**") to the extent that the Adequate Protection Liens do not

1    adequately protect against any diminution in the value of the Prepetition Secured Creditors'

2    interests in the Prepetition Collateral.

3    (b)    *Priority of Adequate Protection Superpriority Claims*.    The Adequate

4    Protection Superpriority Claims shall be junior to the Carve Out and the DIP Liens, the DIP

5    Superpriority Claim and the Adequate Protection Liens and shall otherwise have priority over

6    administrative expenses of the kinds specified in or ordered pursuant to sections 503(b) and

7    507(b) of the Bankruptcy Code, provided that the Adequate Protection Superpriority Claims

8    shall not be payable from or have recourse to Avoidance Actions or the proceeds thereof, or any

9    assets of the estate that do not constitute DIP Collateral.

10    **Provisions Common to DIP Financing and Use of Cash Collateral Authorizations**

11    14.    <u>Amendments</u>.    The DIP Loan Documents may from time to time be amended,

12    modified or supplemented by the parties thereto without notice or a hearing if:  (i) in the

13    reasonable judgment of the Debtor and the DIP Agent, the amendment, modification, or

14    supplement (A) is not prejudicial in any material respect to the rights of third parties, and (B) has

15    been consented to by the DIP Agent, and (ii) a copy (which may be provided through electronic

16    mail or facsimile) of the form of amendment, modification or supplement is provided to counsel

17    for the Committee and the U.S. Trustee at least two (2) Business Days prior to the effective date

18    of the amendment, modification or supplement.

19    15.    <u>Budget Maintenance</u>.    The Budget and any modification to, or amendment or

20    update of, the Budget shall be in form and substance reasonably acceptable to the DIP Agent and

21    approved by the DIP Agent, and the Committee as it relates to the budgeted fees and expenses of

22    the Committee's professionals.  The Debtor shall comply with and update the Budget from time

23    to time in accordance with the DIP Loan Documents (provided that any update shall be in form

24    and substance reasonably acceptable to the DIP Agent and approved by the DIP Agent), but in

25    any event not less than on a weekly basis (with delivery to the DIP Agent on or before

26    Wednesday of each week and to counsel for the Committee each week after delivery to the DIP

27    Agent).

28    16.    <u>Modification of Automatic Stay</u>.    The automatic stay imposed under section

20

362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of the DIP Orders, including, without limitation, to:  (a) permit the Debtor to grant the DIP Liens, the Adequate Protection Liens, the DIP Superpriority Claim, and the Adequate Protection Superpriority Claims; and (b) authorize the Debtor to pay, and the DIP Agent and Prepetition Secured Creditors to retain and apply, payments made in accordance with the terms of the Interim Order and this Final Order.

17.   Perfection of DIP Liens and Adequate Protection Liens.

(a)    *Automatic Perfection of Liens*.  The DIP Orders shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein, including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement, collateral access agreement, customs broker agreement or freight forwarding agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Adequate Protection Liens, or to entitle the DIP Agent or the Prepetition Secured Creditors to the priorities granted herein.   Notwithstanding the foregoing, each of the DIP Agent and the Prepetition Agent is authorized to file, as it deems necessary, such financing statements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence any of the DIP Liens or Adequate Protection Liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create, perfect or enforce the DIP Liens or the Adequate Protection Liens.  The Debtor is authorized to execute and deliver promptly upon demand to the DIP Agent or Prepetition Agent all such financing statements, mortgages, control agreements, notices and other documents as the DIP Agent or Prepetition Agent may reasonably request.   The DIP Agent or the Prepetition Agent may file a photocopy of the Interim Order and/or Final Order as a financing statement with any filing or recording office or with any

registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instrument.

18.    <u>Application of Proceeds of DIP Collateral</u>.  As a condition to the entry into the DIP Loan Documents, the extension of credit under the DIP Facility and the authorization to use Cash Collateral, the Debtor has agreed that the proceeds of DIP Collateral shall be applied as follows:

(a)    (i) all payments received by the DIP Agent in respect of any DIP Obligation and all funds transferred and credited to the "Concentration Account" maintained by the Debtor at Union Bank, N.A. with account number 45010-49912 and (ii) all net proceeds from any Disposition of DIP Collateral (including, without limitation, payments received pursuant to the Sale Agency Agreement (as defined in the DIP Credit Agreement)), each shall be applied in accordance with the DIP Credit Agreement (including, without limitation, Sections 2.05 and 8.03 thereof) or, to the extent the DIP Credit Agreement does not direct the application of such amounts, as follows (in each case subject to funding of the Carve Out including the Professional Fee Account pursuant to paragraph 30(b) hereof):  *first*, to payment of the Prepetition Obligations in accordance with the terms of the Prepetition Credit Documents, *second*, to payment of the costs and expenses of the DIP Agent and DIP Lenders, including Credit Party Expenses payable and reimbursable by the Debtor under the DIP Credit Agreement and the other DIP Loan Documents; *third*, to payment of fees, expenses and interest with respect to the DIP Obligations, *fourth*, to payment of all other DIP Obligations in accordance with the DIP Loan Documents, and *fifth*, to the Debtor's operating account, or for the account of and paid to whoever may be lawfully entitled thereto.  As between the DIP Lenders, nothing provided herein shall be deemed to modify the allocation of the proceeds of DIP Collateral set forth in the DIP Loan Documents.

(b)    The Debtor shall not, directly or indirectly, voluntarily purchase, redeem, defease, prepay any principal of, premium, if any, interest or other amount payable in respect of any indebtedness prior to its scheduled maturity, other than the DIP Obligations and the Prepetition Obligations (each in accordance with the DIP Loan Documents and the DIP Orders)

and other obligations authorized by an order of the Court.

19.    <u>Proceeds of Subsequent Financing</u>.  If the Debtor, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in this Chapter 11 Case or any Successor Case shall obtain credit or incur debt pursuant to sections 364(b), 364(c) or 364(d) of the Bankruptcy Code in violation of the DIP Loan Documents at any time prior to the repayment in full of all DIP Obligations and the termination of the DIP Agent's and the DIP Lenders' obligations to extend credit under the DIP Facility, including subsequent to the confirmation of any plan of reorganization or liquidation with respect to the Debtor and the Debtor's estate, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent to be applied as set forth in paragraph 18(a) herein;

20.    <u>Maintenance of DIP Collateral</u>.  Until the payment in full in cash of all DIP Obligations and the termination of the DIP Agent's and the DIP Lenders' obligations to extend credit under the DIP Facility, as provided therein, the Debtor shall:  (a) insure the DIP Collateral as required under the DIP Facility; and (b) maintain the cash management system which has been agreed to by the DIP Agent or as otherwise required by the DIP Loan Documents.

21.    <u>Disposition of DIP Collateral; Rights of DIP Agent</u>.  Unless otherwise authorized by the Court, the Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral except as permitted by the DIP Loan Documents.   Nothing provided herein shall limit the right of the DIP Agent or the DIP Lenders to object to any proposed disposition of the DIP Collateral.

22.    <u>Termination Date</u>.  On the Termination Date, (i) all DIP Obligations shall be immediately due and payable, subject to the payment or appropriate reserve for any unfunded amounts of the Carve Out (including, without limitation, any accrued but unpaid operating expenses through the Termination Date), and all commitments to extend credit under the DIP Facility will terminate, and (ii) all authority to use Cash Collateral derived from the proceeds of DIP Collateral shall cease, <u>provided</u>, <u>however</u>, that during the Remedies Notice Period, the Debtor may use Cash Collateral solely as set forth in paragraph 11 herein.

1    23.    <u>Events of Default</u>.  The occurrence of an "Event of Default" under the DIP Credit

2    Agreement (unless the DIP Agent, in its sole discretion, elects to waive such Event of Default)

3    shall constitute an event of default under the DIP Orders (each, an "**Event of Default**").

4    24.    <u>Rights and Remedies Upon Event of Default</u>.

5    (a)    *DIP Facility Termination.*    Immediately upon the occurrence and during

6    the continuance of an Event of Default or the Termination Date, the DIP Agent may in its

7    discretion (i) declare the DIP Facility terminated (such declaration, a "**Termination**

8    **Declaration**") or (ii) send a reservation of rights notice to the Debtor and the Committee, which

9    notice may advise the Debtor and the Committee that any further advances under the DIP

10    Facility will be made in the sole discretion of the DIP Agent.  Upon the issuance of a

11    Termination Declaration, at the DIP Agent's option: (I) all or any portion of the Commitment of

12    the DIP Agent and DIP Lenders to make loans or otherwise extend credit may be suspended or

13    terminated; (II) all DIP Obligations may be deemed immediately due and payable; and (III) after

14    expiration of the Remedies Notice Period, any right or ability of the Debtor to use any Cash

15    Collateral may be terminated, reduced or restricted by the DIP Agent, provided that, during the

16    Remedies Notice Period, the Debtor may use Cash Collateral solely in accordance with

17    paragraph 11 of this Final Order.  With respect to the DIP Collateral, following the Termination

18    Declaration, subject to the Remedies Notice Period, the DIP Agent, the DIP Lenders and the

19    Prepetition Agent may exercise all rights and remedies available to them under the DIP Loan

20    Documents or the Prepetition Credit Documents, as applicable, or applicable law against the DIP

21    Collateral.  Without limiting the foregoing, the DIP Agent, the DIP Lenders and the Prepetition

22    Agent may, subject to the Remedies Notice Period, (i) enter onto the premises of the Debtor in

23    connection with an orderly liquidation of the DIP Collateral; and/or (ii) exercise any rights and

24    remedies provided to DIP Agent, the DIP Lenders or the Prepetition Agent under the DIP Loan

25    Documents or the Prepetition Credit Documents, as applicable, or at law or equity, including all

26    remedies provided under the Bankruptcy Code and pursuant to the Interim Order and the Final

27    Order.  Notwithstanding of the rights and remedies set forth herein or in the DIP Credit

28    Agreement or the DIP Loan Documents, the DIP Agent's and each DIP Lender's right to use or

24

occupy the Debtor's leased premises in connection with the exercise of any right or remedy upon the occurrence of an Event of Default shall be limited to (i) the existing rights of the DIP Agent, each DIP Lender, and the applicable landlord under applicable non-bankruptcy law, (ii) the written consent of the applicable landlord, or (iii) the further order of the Court upon motion and notice appropriate under the circumstances.

(b)        *Notice of Termination*.  Any Termination Declaration shall be given by facsimile (or other electronic means, including electronic mail) to counsel to the Debtor, counsel to the Committee, and the U.S. Trustee (the earliest date any such Termination Declaration is made shall be referred to herein as the "**Termination Declaration Date**").  The DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall automatically cease on the third (3) day following the Termination Declaration Date, except as provided in paragraphs 11 and 24 of this Final Order.  Any automatic stay otherwise applicable to the DIP Agent, the DIP Lenders and the Prepetition Agent is hereby modified so that three (3) business days after the Termination Declaration Date (the "**Remedies Notice Period**"), the DIP Agent, the DIP Lenders and the Prepetition Agent shall be entitled to exercise all rights and remedies against the DIP Collateral in accordance with the DIP Loan Documents or the Prepetition Credit Documents, as applicable, and the DIP Orders and shall be permitted to satisfy the DIP Superpriority Claim and the DIP Liens and the Adequate Protection Liens and Adequate Protection Superpriority Claims of the Prepetition Agent, subject only to the Carve Out.  During the Remedies Notice Period, the Debtor shall be entitled to seek an emergency hearing with the Court for the sole purpose of contesting whether an Event of Default or the Termination Date has occurred and/or is continuing.  Unless the Court determines during the Remedies Notice Period that an Event of Default has not occurred and/or is not continuing, the automatic stay shall automatically be terminated at the end of the Remedies Notice Period without further notice or order and the DIP Agent, the DIP Lenders and the Prepetition Agent shall be permitted to exercise all remedies set forth herein, in the DIP Credit Agreement, the DIP Loan Documents, the Prepetition Credit Documents and as otherwise available at law against the DIP Collateral or the Prepetition Collateral, without further order of or application or motion to the Court, and

1   without restriction or restraint by any stay under sections 362 or 105 of the Bankruptcy Code, or

2   otherwise, against the enforcement of the liens and security interest in the DIP Collateral or any

3   other rights and remedies granted to (x) the DIP Agent with respect thereto pursuant to the DIP

4   Credit Agreement, the other DIP Loan Documents, the Interim Order or this Final Order and (y)

5   the Prepetition Agent with respect thereto pursuant to the Prepetition Credit Agreement, the other

6   Prepetition Credit Documents, the Interim Order or this Final Order.

7        25.    Good Faith Under Section 364 of the Bankruptcy Code; No Modification or Stay

8   of the DIP Orders.  The DIP Agent and each DIP Lender have acted in good faith in connection

9   with the DIP Orders and their reliance on the DIP Orders is in good faith.  Based on the findings

10  set forth in the Interim Order and this Final Order and the record made during the Interim

11  Hearing and Final Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the

12  event any or all of the provisions of the Interim Order or Final Order are hereafter modified,

13  amended or vacated by a subsequent order of this Court, or any other court, the DIP Agent and

14  each of the DIP Lenders shall be and are entitled to the protections provided in section 364(e) of

15  the Bankruptcy Code.  Any such modification, amendment or vacatur shall not affect the validity

16  and enforceability of any advances previously made or made hereunder, or lien, claim or priority

17  authorized or created hereby, provided that the Interim Order or Final Order was not stayed by

18  court order after due notice had been given to the DIP Agent at the time the advances were made

19  or the liens, claims or priorities were authorized and/or created.  Any liens or claims granted to

20  the DIP Agent and the DIP Lenders arising prior to the effective date of any such modification,

21  amendment or vacatur of the Interim Order or Final Order shall be governed in all respects by

22  the original provisions of the Interim Order or Final Order, including entitlement to all rights,

23  remedies, privileges and benefits granted herein, provided that the Interim Order or Final Order

24  was not stayed by court order after due notice had been given to the DIP Agent and each DIP

25  Lender at the time the advances were made or the liens, claims or priorities were authorized

26  and/or created.

27        26.    DIP and Other Expenses.  The Debtor is authorized and directed to pay all

28  reasonable and documented out-of-pocket expenses of (x) the DIP Agent and the DIP Lenders in

connection with the DIP Facility (including, without limitation, expenses incurred prior to the Petition Date), as provided in the DIP Loan Documents, and (y) the Prepetition Agent (including, without limitation, expenses incurred prior to the Petition Date) as provided in the Prepetition Credit Documents, including, without limitation, reasonable legal, accounting, collateral examination, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, and indemnification and reimbursement of fees and expenses, upon the Debtor's receipt of invoices for the payment thereof.  Payment of all such fees and expenses shall not be subject to allowance by the Court and professionals for the DIP Agent, the DIP Lenders and the Prepetition Agent shall not be required to comply with the U.S. Trustee fee guidelines. Notwithstanding the foregoing, at the same time such invoices are delivered to the Debtor, the professionals for the DIP Agent, the DIP Lenders and the Prepetition Agent shall deliver a copy of their respective invoices to counsel for the Committee and the U.S. Trustee, redacted as necessary with respect to any privileged or confidential information contained therein.  Any objections raised by the Debtor, the U.S. Trustee or the Committee with respect to such invoices within ten (10) business days of the receipt thereof will be resolved by the Court.  In the event of any objection, the provisions of section 107 of the Bankruptcy Code and Rule 9018 of the Federal Rules of Bankruptcy Procedure shall apply.  Pending such resolution, the undisputed portion of any such invoice will be paid promptly by the Debtor. Notwithstanding the foregoing, the Debtor is authorized and directed to pay on the Closing Date all reasonable fees, costs and expenses of the DIP Agent, the DIP Lenders and the Prepetition Agent incurred on or prior to such date without the need for any professional engaged by the DIP Agent, the DIP Lenders or the Prepetition Agent to first deliver a copy of its invoice as provided for herein.

27.    Indemnification.

(a)    The Debtor shall indemnify and hold harmless the DIP Agent and its shareholders, members, directors, agents, officers, subsidiaries and affiliates, successors and assigns, attorneys and professional advisors, in their respective capacities as such, from and against any and all damages, losses, settlement payments, obligations, liabilities, claims, actions or causes of action, whether groundless or otherwise, and reasonable costs and expenses

27

incurred, suffered, sustained or required to be paid by an indemnified party of every nature and character arising out of or related to the DIP Loan Documents, or the DIP Facility or the transactions contemplated thereby and by the DIP Orders, whether such indemnified party is party thereto, as provided in and pursuant to the terms of the DIP Loan Documents and as further described therein and herein, or in connection with this Chapter 11 Case, any plan, or any action or inaction by the Debtor, in each case except to the extent resulting from such indemnified party's gross negligence or willful misconduct as finally determined by a final non-appealable order of a court of competent jurisdiction, provided, that such indemnity shall not extend to Salus Capital Partners, LLC in its capacity as Prepetition Agent or to any claims against it in connection with the Prepetition Credit Documents or the Prepetition Obligations (for which Salus Capital Partners shall be entitled to indemnification, if any, provided under the Prepetition Credit Documents) and such indemnity shall not under any circumstances be payable from or have recourse to Avoidance Actions, Commercial Tort Claims, or the proceeds thereof.  In all such litigation, or the preparation therefor, the DIP Agent shall be entitled to select its own counsel and, in addition to the foregoing indemnity, the Debtor agrees to promptly pay the reasonable fees and expenses of such counsel.

(b)    *DIP Indemnity Account*.  Upon the earlier to occur of (i) the payment in full, in cash of all amounts due to the DIP Agent and DIP Lenders under the DIP Loan Documents or (ii) the conclusion of the Remedies Notice Period, the Debtor shall pay an amount equal to the lesser of (x) $250,000 and (y) the Credit Party Expenses payable and reimbursable by the Debtor under the DIP Credit Agreement and the other DIP Loan Documents, from proceeds of the DIP Collateral into an indemnity account (the "**DIP Indemnity Account**") subject to first priority liens of the DIP Agent.  The DIP Indemnity Account shall be released and the funds applied in accordance with paragraph 18 of this Final Order upon expiration of the Challenge Period.

28.    Proofs of Claim.  Any order entered by the Court in relation to the establishment of a bar date for any claims (including without limitation administrative claims) in the Chapter 11 Case or Successor Case shall not apply to the DIP Agent, DIP Lenders or the Prepetition

1  Secured Parties.  Neither DIP Agent nor the Prepetition Agent will be required to file proofs of

2  claim or requests for approval of administrative expenses in the Chapter 11 Case or Successor

3  Case, and the provisions of the DIP Order relating to the amount of the DIP Obligations, the DIP

4  Superpriority Claim, the Prepetition Obligations and the Adequate Protection Superpriority

5  Claim shall constitute timely filed proofs of claim and/or administrative expense requests.

6         29.    Rights of Access and Information.  Without limiting the rights of access and

7  information afforded the DIP Agent and the DIP Lenders under the DIP Loan Documents, the

8  Debtor shall be, and hereby is, required to afford representatives, agents and/or employees of the

9  DIP Agent and DIP Lenders reasonable access to the Debtor's premises and its books and

10 records in accordance with the DIP Loan Documents, and shall reasonably cooperate, consult

11 with, and provide to such persons all such information as may be reasonably requested.  In

12 addition, the Debtor authorize its independent certified public accountants, financial advisors,

13 investment bankers and consultants to cooperate, consult with, and provide to the DIP Agent all

14 such information as may be reasonably requested with respect to the business, results of

15 operations and financial condition of the Debtor.

16        30.    Carve Out.

17               (a)    Generally.  Upon the occurrence of the Carve-Out Trigger Date (defined

18 below), the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens (defined

19 below), and the 507(b) Claims (defined below) of the Prepetition Secured Parties, and all other

20 claims and liens granted by the Interim Order and Final Order shall each be subject and

21 subordinate to the payment (from either Cash Collateral or proceeds resulting from liquidation of

22 DIP Collateral or Prepetition Collateral) of the following:  (i) the unpaid fees payable to the

23 Clerk of the Bankruptcy Court and statutory fees payable to the U.S. Trustee pursuant to section

24 1930 of Title 28 of the United States Code, together with the statutory rate of interest (for the

25 avoidance of doubt, there is no limitation on the obligations of the Debtor and its Estate with

26 respect to unpaid fees payable to the U.S. Trustee and Clerk of the Bankruptcy Court pursuant to

27 section 1930 of Title 28 of the United States Code); plus (ii) accrued but unpaid operating

28 expenses provided for in the Budget through the Termination Date; plus (iii) the fee and expense

claims of the respective retained professionals of the Debtor and the Committee that have been approved by this Court during the Chapter 11 Case pursuant to sections 327, 328, 330, 331 and 1103 of the Bankruptcy Code or otherwise (the retained professionals of the Debtor and the Committee are collectively referred to as the "**Retained Professionals**"), which were incurred (A) on and after the Petition Date and prior to the Carve-Out Trigger Date in amounts not in excess of the aggregate amounts set forth for each such Retained Professional in the DIP Budget for the period  between the Petition Date and the Carve-Out Trigger Date, and (B) on and after the Carve-Out Trigger Date in an aggregate amount not exceeding $100,000 in the aggregate for all Retained Professionals (the "**Post-Default Carve-Out**") provided that, in each case, such fees and expenses of the Retained Professionals are in accordance with the DIP Budget on a cumulative basis for the applicable period and are ultimately allowed on a final basis by this Court (whether or not such fees and expenses are allowed by this Court as of or after the Carve-Out Trigger Date) pursuant to sections 330 and 331 of the Bankruptcy Code or otherwise and are not excluded from the Carve-Out pursuant to paragraph 31 and 33, provided, however, nothing herein shall waive the right of any party to object to the allowance of any such fees and expenses, and provided further, that the Carve-Out shall not include any bonus, transaction, success or completion fees or any other fees of similar import for Retained Professionals (all such amounts in this Paragraph 30(a)(i), (ii) and (iii), together with the limitations set forth therein, are collectively referred to as the "**Carve-Out**").  Any unused amount of Post-Default Carve-Out shall be available for distributions to general unsecured creditors in this Chapter 11 Case.  The Carve-Out for the Retained Professionals shall be exclusively used for the benefit of the Retained Professionals and for no other purposes, except as set forth immediately above with respect to the unused amount of the Post-Default Carve-Out.  In the event of the appointment of a trustee (whether in Chapter 11 or Chapter 7), examiner or any other person or entity not expressly employed by the Debtor in possession or the Committee, respectively, or if a non-professional creditor seeks payment from the estate for any purpose, including, without limitation, any asserted administrative or priority expense claim, the Carve-Out for the Retained Professionals shall not be available or utilized for such persons or entities.

(b)    Professional Fee Escrow.  On a weekly basis, the Debtor shall transfer funds to a segregated account maintained by Levene, Neale, Bender, Yoo & Brill L.L.P. (the "**Professional Fee Account**") in the amounts for the preceding week, if any, set forth in the DIP Budget for fees and expenses of the Retained Professionals.  Such funds shall be held in escrow in the Professional Fee Account for the benefit of the Retained Professionals, respectively, to be applied pro rata to the fees and expenses of such Retained Professionals (the "**Escrowed Funds**"), provided, however, that payment from the Professional Fee Account shall only be made pursuant to any interim compensation order or interim or final fee order; provided further, however, that for the avoidance of doubt, fees and expenses payable to the Retained Professionals shall be paid solely out of the Professional Fee Account, and all amounts deposited in the Professional Fee Account shall reduce, on a dollar for dollar basis, the obligation to fund the Carve-Out, and provided further that success fees that may be earned by any Retained Professional and approved by the Court shall be paid from the proceeds of any transaction and shall not be deposited into the Professional Fee Escrow.  Without in any way limiting the Debtor's ability to use the Escrowed Funds to pay the fees and expenses of the Retained Professionals, the Escrowed Funds in the Professional Fee Account shall remain property of the Debtor's estate and encumbered by and subject to the DIP Liens, and the Superpriority Claims, in their respective order of priority; provided, however, that such liens and claims shall be subordinate to the Carve-Out.  The DIP Lender shall have no obligation to pay any fees and expenses of the Retained Professional except to the extent of the funding in the Professional Fee Account.

(c)    Carve-Out Trigger Date.  The term "**Carve-Out Trigger Date**" means the date on which the DIP Agent provides written notice to the Debtor, the U.S. Trustee, counsel to the Committee that the Carve-Out is invoked, which notice may be delivered only on or after the occurrence of the Termination Date.

(d)    *No Direct Obligation to Pay Professional Fees or Committee Expenses.* The DIP Agent, the DIP Lenders, and the Prepetition Secured Creditors shall not be responsible for the funding, direct payment or reimbursement of any fees or disbursements of any Case

Professionals or any Committee Expenses incurred in connection with the Chapter 11 Case or any Successor Case.  Nothing in the Interim Order or the Final Order or otherwise shall be construed to obligate the DIP Agent, the DIP Lenders, or the Prepetition Secured Creditors in any way to pay compensation to or to reimburse expenses of any Case Professional (including any Committee Expenses), or to guarantee that the Debtor has sufficient funds to pay such compensation or reimbursement.  Nothing in this Interim Order or the Final Order or otherwise shall be construed to increase the Carve Out if actual (i) Allowed Professional Fees of any Case Professional or (ii) Committee Expenses are higher in fact than the estimated fees and disbursements reflected in the Budget.

(e)    *Payment of Carve Out*.  Upon the occurrence of the Termination Date, the DIP Obligations, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens and the Adequate Protection Superpriority Claims shall be subject to the payment of the unfunded amount of the Carve Out.  The funding of the Carve Out shall be added to and made a part of the DIP Obligations and secured by the DIP Collateral and otherwise entitled to the protections granted under the Interim Order, the Final Order, the DIP Loan Documents, the Bankruptcy Code and applicable law.

31.    <u>Limitations on the DIP Facility, the DIP Collateral, the Cash Collateral and the Case Professionals Carve Out</u>.  Unless otherwise ordered by the Court or consented to by the DIP Agent, and subject to entry of a Final Order, the DIP Facility, the DIP Collateral, the Cash Collateral and the Carve Out may not be used (a) to (i) commence a Challenge (as defined in paragraph 33 below), (ii) to attempt to or to invalidate, set aside, avoid or subordinate, in whole or in part, the DIP Obligations or the Prepetition Obligations, (iii) seek monetary, injunctive or other affirmative relief against the DIP Agent, the DIP Lenders, the Prepetition Secured Creditors, or their respective collateral, (iv) attempting to or to prevent, hinder or otherwise delay the exercise by the DIP Agent, the DIP Lenders, or the Prepetition Secured Creditors of any rights and remedies under the Interim Order or the Final Order, the DIP Loan Documents, the Prepetition Credit Documents, or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Court or otherwise) by the DIP Agent upon any of the

DIP Collateral, by the Prepetition Agent with respect to its Adequate Protection Liens, or (iv) pursue litigation against any Prepetition Secured Creditor or to seek to amend or modify any of the rights granted to the DIP Agent, the DIP Lenders, the Prepetition Secured Creditors under the Interim Order, this Final Order, the DIP Loan Documents or the Prepetition Credit Documents, including seeking use of Cash Collateral on a contested basis; (b) to make any distribution under a plan of reorganization in any Chapter 11 Case that does not repay the DIP Obligations and the Prepetition Obligations indefeasibly in full, in cash; (c) to make payments inconsistent with the Budget; (d) to incur Indebtedness (as defined in the DIP Credit Agreement) outside the ordinary course of business, except as permitted under the DIP Loan Documents; (e) to assert, commence or prosecute any claims or causes of action whatsoever, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code, against the DIP Agent, the DIP Lenders, or the Prepetition Secured Creditors; (f) to prosecute an objection to, contest in any manner, or raise any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the Prepetition Obligations, the DIP Liens, the Prepetition Liens or any other rights or interests of the DIP Agent, the DIP Lenders, or the Prepetition Secured Creditors; or (g) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type against the interests of the Prepetition Secured Creditors, the DIP Agent or the DIP Lenders or their rights under the DIP Loan Documents, the Prepetition Credit Documents, the Interim Order or this Final Order.

32.    **Payment of Compensation**.  Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any Case Professionals or shall affect the right of the DIP Agent or any of the DIP Lenders to object to the allowance and payment of such fees and expenses.

33.    **Reservation of Certain Third Party Rights and Bar of Challenges and Claims**.

(a)    The stipulations, findings, representations and releases contained in the Interim Order, the Final Order or the DIP Loan Documents with respect to the Prepetition Secured Creditors and the Prepetition Obligations shall be binding upon all parties-in-interest, any trustee appointed in this case and the Committee(each, a "**Challenge Party**"), unless and

1  solely to the extent that (i) any Challenge Party, with standing and requisite authority (the

2  Committee is hereby deemed to have such standing), has timely filed appropriate pleadings and

3  timely commenced a Challenge (as defined herein) during the Challenge Period (as defined

4  herein) and (ii) the Court rules in favor of the plaintiff in any such timely and properly filed

5  Challenge.  For purposes of this paragraph 33:  (a) "**Challenge**" means any claim or cause of

6  action against any of the Prepetition Secured Creditors on behalf of the Debtor or the Debtor's

7  creditors and interest holders, or to object to or to challenge the stipulations, findings or Debtor's

8  Stipulations set forth herein, including, but not limited to those in relation to:  (i) the validity,

9  extent, priority, or perfection of the mortgage, security interests, and liens of any Prepetition

10  Secured Creditor; (ii) the validity, allowability, priority, or amount of the Prepetition Obligations

11  (including any fees included therein); (iii) the secured status of the Prepetition Obligations; or

12  (iv) any liability of any of the Prepetition Secured Creditors with respect to anything arising from

13  any of the respective Prepetition Credit Documents; provided, that up to $50,000 may be used by

14  a Committee to investigate but not pursue such claims and (b)  "**Challenge Period**" means the

15  time period for the Committee or other party in interest to commence, or in the case of any party

16  other than the Committee, to file a motion to obtain authority to commence, any related

17  proceedings which shall be September 9, 2015, which may be extended by agreement of

18  Prepetition Agent, or for good cause shown and (ii) seventy-five days following the Petition Date

19  for any other party in interest.

20          (b)    Upon the expiration of the Challenge Period without the filing of a

21  Challenge (the "**Challenge Period Termination Date**"):  (A) any and all such Challenges and

22  objections by any party (including, without limitation, the Committee, any Chapter 11 trustee,

23  and/or any examiner or other estate representative appointed in these Chapter 11 Case, and any

24  Chapter 7 trustee and/or examiner or other estate representative appointed in any Successor

25  Case), shall be deemed to be forever waived, released and barred, (B) all matters not subject to

26  the Challenge, and all findings, Debtor's Stipulations, waivers, releases, affirmations and other

27  stipulations as to the priority, extent, and validity as to each Prepetition Secured Creditors'

28  claims, liens, and interests shall be of full force and effect and forever binding upon the Debtor,

the Debtor's bankruptcy estate and all creditors, interest holders, and other parties in interest in these Chapter 11 Case and any Successor Chapter 11 Case; and (C) any and all claims or causes of action against any of the Debtor or the Prepetition Secured Creditors relating in any way to the Debtor or the Prepetition Credit Documents shall be forever waived and released by the Debtor's estate, all creditors, interest holders and other parties in interest in these Chapter 11 Case and any Successor Case.

34.    <u>Reservation of Rights</u>:  Notwithstanding anything to the contrary contained in the Interim Order or Final Order, in the event there is a timely and successful Challenge by any party in interest (in accordance with paragraph 33 hereof), this Court may unwind the repayment of the Prepetition Obligations and order the repayment of such amount to the extent that such payment resulted in the payment of any Prepetition Obligations consisting of an unsecured claim or other amount not allowable under section 502 of the Bankruptcy Code.  Notwithstanding the foregoing, a successful Challenge shall not in any way affect the validity, enforceability or priority of the DIP Obligations or the DIP Liens unless otherwise ordered by the Court.

35.    <u>No Third Party Rights</u>.  Except as explicitly provided for herein, the DIP Orders do not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

36.    <u>[Reserved]</u>.

37.    <u>No Marshaling/Applications of Proceeds</u>.  Upon entry of the Final Order, neither the DIP Agent, the DIP Lenders, nor the Prepetition Secured Creditors shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral.

38.    <u>Section 552(b)</u>.  The DIP Agent shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code.  Subject to the entry of the Final Order, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Agent, the DIP Lenders, or the Prepetition Secured Creditors with respect to proceeds, products, offspring or profits of any of the Prepetition Collateral.

39.    <u>Discharge Waiver</u>.  The Debtor expressly stipulates, and the Court finds and

35

adjudicates that, none of the DIP Obligations, the DIP Superpriority Claim or the DIP Liens shall be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the DIP Obligations have been paid in full in cash on or before the effective date of a confirmed plan of reorganization. The Debtor expressly stipulates, and the Court finds and adjudicates that, none of the Adequate Protection Liens or Adequate Protection Superpriority Claims shall be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the Adequate Protection Superpriority Claims and claims secured by the Adequate Protection Liens have been paid in full in cash on or before the effective date of a confirmed plan of reorganization. The Debtor shall not propose or support any plan or sale of all or substantially all of the Debtor's assets or entry of any confirmation order or sale order that is not conditioned upon the payment in full in cash, on the effective date of such plan of all DIP Obligations and Adequate Protection Superpriority Claims.

40.    <u>Rights Preserved</u>. Notwithstanding anything herein to the contrary, the entry of the DIP Orders is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) DIP Agent's or the Prepetition Secured Creditors' right to seek any other or supplemental relief in respect of the Debtor (including the right to seek additional adequate protection, including, without limitation, in the form of reimbursement of fees and expenses of counsel to the Prepetition Secured Creditors); (b) the rights of any of the Prepetition Secured Creditors to seek the payment by the Debtor of post-petition interest or fees pursuant to section 506(b) of the Bankruptcy Code; or (c) any of the rights of the DIP Agent under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of the Chapter 11 Case or Successor Case, conversion of the Chapter 11 Case to a case under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans. Other than as expressly set forth in the DIP Orders, any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Agent and the DIP Lenders are preserved.

41.    **Release of DIP Secured Parties.  The Debtor hereby acknowledges effective upon entry of the Interim Order and upon entry of the Final Order, that it has any defense, counterclaim, offset, recoupment, cross-complaint, claim or demand of any kind or nature whatsoever that can be asserted to reduce or eliminate all of any part of the Debtor's liability to repay the DIP Agent or DIP Lenders as provided in the DIP Credit Agreement or to seek affirmative relief or damages of any kind or nature from the DIP Agent or any DIP Lender. The Debtor, on behalf of itself and its bankruptcy estate, and on behalf of all its successors, assigns, and Subsidiaries and any Person acting for and on behalf of, or claiming through them (collectively, and in each case in their capacities as such, the "Releasing Parties"), hereby fully, finally and forever releases and discharges the DIP Agent and each DIP Lender and its respective past and present officers, directors, servants, agents, attorneys, assigns, heirs, parents, subsidiaries, participants, and each Person acting for or on behalf of any of them (collectively, and in each case in their capacities as such, the "Released Parties") of and from any and all actions, causes of action, demands, suits, claims, liabilities, Liens, lawsuits, adverse consequences, amounts paid in settlement, costs, damages, debts, deficiencies, diminution in value, disbursements, expenses, losses and other obligations of any kind or nature whatsoever, whether in law, equity or otherwise (including, without limitation, those arising under Sections 541 through 550 of the Bankruptcy Code and interest or other carrying costs, penalties, legal, accounting and other professional fees and expenses, and incidental, consequential and punitive damages payable to third parties), whether known or unknown, fixed or contingent, direct, indirect, or derivative, asserted or unasserted, foreseen or unforeseen, suspected or unsuspected, now existing, whether held in a personal or representative capacity, and which are based on any act, fact, event or omission or other matter, cause or thing occurring at or from any time prior to and including the date hereof in any way, arising out of, connected with or relating to the DIP Credit Agreement, the Interim Order, the Final Order, the Chapter 11 Case or any other agreement, document or instrument related to any of the foregoing and the transactions contemplated hereby or thereby, provided that the foregoing release shall**

have no effect or impact whatsoever on the rights of the Committee or any other party in interest to assert a Challenge in accordance with this Final Order with respect to the Prepetition Obligations and the Prepetition Secured Creditors.

42.    <u>No Waiver by Failure to Seek Relief</u>.  The failure of the DIP Agent or the DIP Lenders to seek relief or otherwise exercise rights and remedies under the DIP Orders, the DIP Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Agent or the DIP Lenders.

43.    <u>Transplace Texas LP</u>.  Pursuant to the Court's June 17, 2015 Order Authorizing the Debtor to Provide Adequate Protection for Warehouse Liens and Carrier Liens [Docket No. 65] (the "**Warehouse Order"),** the Possessory Lien Creditors (as that term is defined in the Warehouse Order) will maintain their possessory lien rights to the same priority, validity, and extent as their prepetition liens (the "**Warehouse Liens**").  The Warehouse Liens shall attach to the proceeds of the sales conducted by the Agent pursuant to the Final Order of the Court Authorizing Assumption of Agency Agreement entered on July 6, 2015 [Docket No. 240] with the same priority, validity, and extent as the Possessory Lien Creditors' prepetition liens.

44.    <u>Binding Effect of DIP Orders</u>.    Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of the Final Order shall become valid and binding upon and inure to the benefit of the Debtor, the DIP Agent, the DIP Lenders, the Prepetition Secured Creditors, all other creditors of the Debtor, the Committee or any other court appointed committee, appointed in the Chapter 11 Case, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in the Chapter 11 Case, any Successor Case, or upon dismissal of the Chapter 11 Case or Successor Case.

45.    <u>No Modification of DIP Orders</u>.  Until and unless the DIP Obligations have been paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP Facility have been terminated, the Debtor irrevocably waives the right to seek and shall not seek or consent to, directly or indirectly: (a) without the prior written consent

of the DIP Agent (i) any modification, stay, vacatur or amendment to the DIP Orders; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtor (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 507(a) or 507(b) of the Bankruptcy Code) in the Chapter 11 Case or Successor Case, equal or superior to the DIP Superpriority Claim, other than the Carve Out; (b) any order allowing use of Cash Collateral resulting from DIP Collateral; and (c) any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens.  The Debtor irrevocably waives any right to seek any amendment, modification or extension of the DIP Orders without the prior written consent, as provided in the foregoing, of the DIP Agent, and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Agent.

46.    <u>Final Order Controls</u>.  In the event of any inconsistency between the terms and conditions of the DIP Loan Documents or the Interim Order, the provisions of this Final Order shall govern and control.

47.    <u>Survival</u>.  The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:  (a) confirming any plan of reorganization in the Chapter 11 Case; (b) converting the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing the Chapter 11 Case or any Successor Case; or (d) pursuant to which this Court abstains from hearing the Chapter 11 Case or Successor Case. The terms and provisions of the DIP Orders, including the claims, liens, security interests and other protections granted to the DIP Agent and Prepetition Secured Creditors pursuant to the DIP Orders and/or the DIP Loan Documents, notwithstanding the entry of any such order, shall continue in the Chapter 11 Case, in any Successor Case, or following dismissal of the Chapter 11 Case or any Successor Case, and shall maintain their priority as provided by the DIP Orders until all DIP Obligations have been paid in full and all commitments to extend credit under the DIP Facility are terminated.  The terms and provisions concerning the indemnification of the DIP Agent shall continue in the Chapter 11 Case and in any Successor Case, following dismissal of the Chapter 11 Case or any Successor Case, following termination of the DIP Loan Documents

1    and/or the repayment of the DIP Obligations.

2    48.    Final Hearing.  The Final Hearing to consider entry of the Final Order and final

3    approval of the DIP Facility was held on July 22, 2015 at 10:00 a.m. (Pacific).

4    49.    Notice of Final Hearing:  The Debtor shall serve a copy of this Final Order upon:

5    (a) the Office of the United States Trustee for the Central District of California, Santa Ana

6    Division; (b) the Internal Revenue Service; (c) the twenty (20) largest unsecured creditors of the

7    Debtor at its last known addresses; (d) Greenberg Traurig, LLP (Attn: Nancy A. Mitchell, Esq.

8    and Jeffrey M. Wolf, Esq.), attorneys for the DIP Agent and the Prepetition Agent; (e) any party

9    which has filed prior to such date a request for notices under Bankruptcy Rule 2002 with this

10    Court; and (f) counsel for the Committee, Pachulski Stang Ziehl & Jones LLP (Attn:  Jeffrey N.

11    Pomerantz, Esq. and Ira D. Kharasch, Esq.).

12    50.    Effect of this Final Order.  This Final Order shall constitute findings of fact and

13    conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect immediately,

14    notwithstanding anything to the contrary proscribed by applicable law.

15    51.    Retention of Jurisdiction.  The Court has and will retain jurisdiction to enforce

16    this Interim Order according to its terms.

17                                                            ###

18

19

20

21

22

23    Date: August 4, 2015

24                                                            Theodor C. Albert
                                                            United States Bankruptcy Judge

25

26

27

28

40